SKAPIK LAW GROUP
Mark J. Skapik (SBN 164957)
Email: mskapik@skapiklaw.com
Geralyn L. Skapik (SBN 145055)
Email: gskapik@skapiklaw.com
Blair J. Berkley (SBN 222293)
Email: bberkley@skapiklaw.com
5861 Pine Avenue, Suite A-1
Chino Hills, California 91709
Telephone: (909) 398-4404
Facsimile: (909) 398-1883

Attorneys for Plaintiff
RHONDA R. FITZGERALD

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RHONDA R. FITZGERALD, an individual, and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MARCUS POLLARD, an individual; Lieutenant C. MOORE, an individual; Sergeant H. CRUZ, an individual; Officer JACKSON, an individual; Officer LITTLE, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. **'20 CV 0848 JM   NLS**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>1. 42 U.S.C. § 1983 (No reasonable suspicion)<br>2. 42 U.S.C. § 1983 (No reasonable suspicion)<br>3. 42 U.S.C. § 1983 (Failure to train and supervise)<br>4. Intentional infliction of emotional distress<br>5. Negligence (Government Code § 815.6)<br><br>**DEMAND FOR JURY TRIAL** |

///

///

- 1 -
COMPLAINT

1      Plaintiff RHONDA R. FITZGERALD ("Plaintiff") alleges as follows:

2                                    **PARTIES**

3          1.     Plaintiff RHONDA R. FITZGERALD is an individual and resident of

4     Victorville, California.  Plaintiff has worked at Kaiser Permanente for 29 years and is a

5     law-abiding citizen.

6          2.     Defendant MARCUS POLLARD ("POLLARD") is an individual and

7     Warden of the Richard J. Donovan Correctional Facility ("Prison") located at 480 Alta

8     Road, San Diego, California 92179.  Plaintiff is informed and believes and thereon

9     alleges that POLLARD is a resident of San Diego County.

10         3.     Defendant Lieutenant C. MOORE ("MOORE") is an individual and

11    corrections officer at the Prison.  Plaintiff is informed and believes and thereon alleges

12    that MOORE is a resident of San Diego County.

13         4.     Defendant Sergeant H. CRUZ ("CRUZ") is an individual and corrections

14    officer at the Prison.  Plaintiff is informed and believes and thereon alleges that CRUZ

15    is a resident of San Diego County.

16         5.     Defendant Officer JACKSON ("JACKSON") is a female corrections

17    officer at the Prison.  Plaintiff is informed and believes and thereon alleges that

18    JACKSON is a resident of San Diego County.

19         6.     Defendant Officer LITTLE ("LITTLE") is a female corrections officer at

20    the Prison.  Plaintiff is informed and believes and thereon alleges that LITTLE is a

21    resident of San Diego County.

22         7.     Defendants POLLARD, MOORE, CRUZ, JACKSON, and LITTLE are

23    sued in their individual capacities.

24         8.     The true names of Defendants DOE 1 through 10 are unknown to Plaintiff

25    who, therefore, sues these Defendants by such fictitious names.  When the true names of

26    these Defendants are ascertained, Plaintiff will amend this Complaint to allege their true

27    names.  Plaintiff is informed and believes and thereon alleges that Defendant DOE 1 is a

28    ///

1  former warden at Prison.  Plaintiff is informed and believes and thereon alleges that
2  Defendants 2 through 10 are corrections officers at the Prison.

3  ### JURISDICTION AND VENUE

4  9.    The Court has original jurisdiction over Plaintiff's 42 U.S.C section 1983
5  claims pursuant to 28 U.S.C. sections 1331 and 1343.  The Court has supplemental
6  jurisdiction over Plaintiff's state-law claims.

7  ### PRESENTATION OF WRITTEN CLAIM

8  10.    On March 4, 2020, in compliance with California *Government Code*
9  section 925.4, Plaintiff presented to the Department of General Services, State of
10  California, a written claim, on behalf of herself as an individual, for damages arising out
11  of her unlawful search on September 28, 2019, at the Prison.

12  11.    On March 5, 2020, in compliance with California *Government Code*
13  section 925.4, Plaintiff presented to the Department of General Services, State of
14  California, a written claim, on behalf of herself and those similarly situated, for
15  damages arising out of her unlawful search on September 28, 2019, at the Prison.

16  12.    The State rejected both claims on March 13, 2020.  Therefore, this
17  complaint is timely filed.

18  ### GENERAL ALLEGATIONS

19  13.    On September 28, 2019, Plaintiff went to the Prison to see her friend,
20  inmate Christopher Roberts ("ROBERTS"), as she had previously done on multiple
21  occasions.

22  14.    Plaintiff was not screened or searched upon arrival to the visitor reception
23  area.

24  15.    Plaintiff joined the line to wait for Defendant Corrections Officer LITTLE
25  at the front desk.

26  16.    When Plaintiff was the next to be served, she walked up to the front desk.
27  LITTLE represented to Plaintiff that she must submit to an unclothed search or that she
28  would not be permitted to visit ROBERTS.

17.    When Plaintiff asked why such a search was necessary, LITTLE responded that the search was random and that Warden POLLARD requested it.

18.    LITTLE did not offer Plaintiff less-intrusive-search options such as a metal detector, hand-held wand, electronic drug detector, ION scanner, canine search, or clothed-body search.

19.    No one at the Prison explained to Plaintiff what an unclothed search entails.  Plaintiff assumed the search would require removing her top and pants and being patted down to search for guns and contraband. Nowhere on the form did it state that the search would include invasive measures such as removing all clothes, including undergarments, and requiring her to spread her butt checks and cough multiple times while a guard visually inspected her "private parts."

20.    Defendants conduct invasive strip and visual body-cavity searches pursuant to a policy or practice that does not require any particularized suspicion that the visitor is concealing anything in his/her body cavities.

21.    Plaintiff, having driven 165 miles (from Victorville) to see ROBERTS, acquiesced to the search that she understood to be non-intrusive.  She did not agree to submit to a strip search and body-cavity search.

22.    LITTLE produced a Notice of Request for Search form.  Plaintiff signed the form.

23.    LITTLE, on the other hand, did not sign the Notice of Request for Search form.  Plaintiff is informed and believes and thereon alleges that none of LITTLE's supervisors signed the Notice of Request for Search form in advance of the search.   The Notice of Request for Search form was signed after the search was completed.

24.    LITTLE summoned Defendant Corrections Officer JACKSON from the visitor area in Yard "E."

25.    LITTLE grabbed a container and, with JACKSON, led Plaintiff into a small room about the size of a walk-in closet.  LITTLE instructed Plaintiff to turn around, face the wall, and remove each item of clothing.  As Plaintiff removed her

1  clothes, LITTLE patted each item down as she put it into the container. JACKSON
2  stood by the door and looked uncomfortable.

3      26.    When Plaintiff removed everything except for her underwear, and LITTLE
4  continued to request the removal of further garments, Plaintiff asked LITTLE what was
5  going on.

6      27.    LITTLE represented that everything had to be removed so that a body-
7  cavity search could be performed. LITTLE instructed Plaintiff to bend over, spread her
8  butt cheeks, and cough. LITTLE then instructed Plaintiff to lift her breasts. LITTLE
9  found nothing.

10     28.    No one at the Prison explained to Plaintiff why such an intrusive search
11  was required. JACKSON apologized.

12     29.    LITTLE refused Plaintiff's request for a copy of the Notice of Request for
13  Search form, even though the form itself states that the gold copy is to go to the visitor.

14     30.    Plaintiff is informed and believes and thereon alleges that Defendants
15  CRUZ and MOORE subsequently approved and ratified the actions of Defendants
16  LITTLE and JACKSON and the strip search of Plaintiff.

17     31.    After Plaintiff was strip searched, she was advised by another Prison visitor
18  that such a search was common practice and that she too had to undergo a strip search
19  before she was permitted to visit an inmate.

20     32.    Weeks later, Plaintiff returned to the Prison to visit ROBERTS and again
21  requested a copy of the Notice of Request for Search form. The request was ignored.

22     33.    Weeks later, Plaintiff again returned to Prison to visit ROBERTS and again
23  requested a copy of the Notice of Request for Search Form. Plaintiff found Defendant
24  CRUZ in Prison Yard "A." CRUZ produced a copy of the Notice of Request for Search
25  form, signed it in front of Plaintiff, and gave it to Plaintiff. Plaintiff is informed and
26  believes and thereon alleges that the form had been previously signed by Defendant
27  MOORE.

28  ///

34.    *California Code of Regulations*, title 15, section 3173.2 ("Section 3173.2") regulates searches of Prison visitors.

35.    Section 3173.2 states that inspection of visitors may include a search of a visitor's person, personal property and vehicle(s) when there is reasonable suspicion to believe the visitor is attempting to introduce or remove contraband or unauthorized items or substances into or out of the institution/facility.

36.    Section 3173.2(d)(7) defines "unclothed body search" as follows:  An unclothed body search is a security procedure that involves visual inspection of a person's body with all of their clothing removed and a thorough inspection of the persons clothing for the purposes of detecting contraband. This procedure may be conducted with the visitors consent ***when there is a reasonable suspicion*** that the visitor is carrying contraband ***<u>and</u> when no less intrusive means are available to conduct the search***.

## CLASS-ACTION ALLEGATIONS

37.    The CLASS PERIOD runs from two years prior to the filing date of this action to the present date.

38.    The CLASS consists of those visitors to the Richard J. Donovan Correctional Facility in the CLASS PERIOD who were required to submit to an unclothed search as a condition to visiting an inmate and whose Notice of Request for Search form states no specific objective facts and rational inferences establishing individualized reasonable suspicion to believe that the person targeted for the search had an intention of smuggling contraband into the Prison.

39.    The CLASS of visitors is ascertainable from the Prison records and the Notice of Request for Search forms.

40.    Plaintiff is informed and believes and thereon alleges that the CLASS is so numerous, consisting of several hundred individuals, that joinder of all such persons is impracticable.  The disposition of all CLASS-member claims in a class action, rather than in individual actions, will benefit the parties and the Court.  The prosecution of

1    individual actions by CLASS members would waste judicial resources and create

2    potential for conflicting judgments.

3         41.    The questions of law and fact common to the CLASS are substantially

4    similar, and predominate over the questions affecting individual members, because

5    Defendants randomly selected all CLASS members for an intrusive strip search without

6    regard for the Constitutional requirement of reasonable suspicion to believe that the

7    visitors selected for the strip searches had an intention of smuggling contraband into the

8    Prison.

9         42.    Plaintiff is a CLASS member and has claims typical of CLASS members in

10   that Defendants, without reasonable suspicion, randomly selected Plaintiff for a strip

11   search as a condition to visiting an inmate.

12        43.    There is no plain, speedy, or adequate remedy to CLASS members other

13   than maintenance of this class action because Plaintiff is informed and believes and

14   thereon alleges that the damages each individual CLASS member could recover is

15   relatively small, making it economically infeasible to pursue remedies other than a class

16   action.

17        44.    Plaintiff will fairly and adequately protect the CLASS members because

18   the law and facts supporting her claims are identical with the law and facts required to

19   prove the claims of each CLASS member.

20        45.    Plaintiff is represented by experienced, able, and qualified counsel (Skapik

21   Law Group) who are experienced in litigating class actions.  Skapik Law Group

22   possesses the resources necessary to represent the proposed CLASS and is committed to

23   devoting all necessary resources to the prosecution of this matter through trial.

24   ///

25   ///

26   ///

27   ///

28   ///

COMPLAINT

# I.

## FIRST CAUSE OF ACTION

## VIOLATION OF FOURTH AMENDMENT—SEARCH WITHOUT REASONABLE SUSPICION

### [42 U.S.C. § 1983]

(By Plaintiff and CLASS Against All Defendants)

46.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 45 as though fully set forth herein.

47.    On September 28, 2019, Plaintiff went to the Prison to see her friend, inmate ROBERTS.

48.    Plaintiff was not screened or searched upon arrival to the visitor reception area.

49.    Defendant LITTLE represented to Plaintiff that she must submit to an unclothed search or that she would not be permitted to visit ROBERTS.

50.    Defendants had no reasonable suspicion to believe that Plaintiff was going to attempt to smuggle contraband into the Prison, that she committed a crime, or that she intended to commit a crime.

51.    Defendants did not offer Plaintiff less-intrusive-search options such as a metal detector, hand-held wand, electronic drug detector, ION scanner, canine search, or clothed-body search.

52.    No one at the Prison explained to Plaintiff what an unclothed search entails.  Plaintiff assumed the search would require removing her top and pants and being patted down to search for guns and contraband. Nowhere on the form did it state that the search would include invasive measures such as requiring her to spread her butt checks and cough multiple times while a guard visually inspected her "private parts."

53.    Defendants conduct invasive strip and visual body-cavity searches pursuant to a policy or practice that does not require any particularized suspicion that the visitor is concealing anything in his/her body cavity.

54.    Plaintiff, having driven 165 miles (from Victorville) to see ROBERTS, acquiesced to the search that she understood to be non-intrusive.  She did not agree to submit to a strip search and body-cavity search.

55.    LITTLE produced a Notice of Request for Search form.  Plaintiff signed the form because she wanted to see ROBERTS.

56.    LITTLE, on the other hand, did not sign the Notice of Request for Search form.  Plaintiff is informed and believes and thereon alleges that none of LITTLE's supervisors signed the Notice of Request for Search form in advance of the search.  The Notice of Request for Search form was signed after the search was completed.

57.    LITTLE summoned Defendant JACKSON from the visitor area in Yard "E."

58.    LITTLE grabbed a container and, with JACKSON, led Plaintiff into a small room about the size of a walk-in closet.  LITTLE instructed Plaintiff to turn around, face the wall, and remove each item of clothing.  As Plaintiff removed her clothes, LITTLE patted each item down as she put it into the container.  JACKSON stood by the door and looked uncomfortable.

59.    When Plaintiff removed everything except for her underwear, and LITTLE continued to request the removal of further garments, Plaintiff asked LITTLE what was going on.

60.    LITTLE represented that everything had to be removed so that a body-cavity search could be performed.  LITTLE instructed Plaintiff to bend over, spread her butt cheeks, and cough.  LITTLE then instructed Plaintiff to lift her breasts.  LITTLE found nothing.

61.    No one at the Prison explained to Plaintiff why such an intrusive search was required.  JACKSON apologized.

62.    LITTLE refused Plaintiff's request for a copy of the Notice of Request for Search form, even though the form itself states that the gold copy is to go to the visitor.

///

1      63.    Plaintiff is informed and believes and thereon alleges that Defendants

2    CRUZ and MOORE subsequently approved and ratified the actions of Defendants

3    LITTLE and JACKSON and the strip search of Plaintiff.

4      64.    After Plaintiff was strip searched, she was advised by another Prison visitor

5    that such a search was common practice and that she too had to undergo a strip search

6    before she was permitted to visit an inmate.

7      65.    Weeks later, Plaintiff returned to the Prison to visit ROBERTS and again

8    requested a copy of the Notice of Request for Search form.  The request was ignored.

9      66.    Weeks later, Plaintiff again returned to Prison to visit ROBERTS and again

10    requested a copy of the Notice of Request for Search Form.  Plaintiff found Defendant

11    CRUZ in Prison Yard "A."  CRUZ produced a copy of the Notice of Request for Search

12    form, signed it in front of Plaintiff, and gave it to Plaintiff.  Plaintiff is informed and

13    believes and thereon alleges that the form had been previously signed by Defendant

14    MOORE.

15      67.    *California Code of Regulations*, title 15, section 3173.2 ("Section 3173.2")

16    regulates searches of Prison visitors.

17      68.    Section 3173.2 states that inspection of visitors may include a search of a

18    visitor's person, personal property and vehicle(s) when there is reasonable suspicion to

19    believe the visitor is attempting to introduce or remove contraband or unauthorized

20    items or substances into or out of the institution/facility.

21      69.    Section 3173.2(d)(7) defines "unclothed body search" as follows:  An

22    unclothed body search is a security procedure that involves visual inspection of a

23    person's body with all of their clothing removed and a thorough inspection of the

24    persons clothing for the purposes of detecting contraband. This procedure may be

25    conducted with the visitors consent ***when there is a reasonable suspicion*** that the

26    visitor is carrying contraband ***and*** ***when no less intrusive means are available to***

27    ***conduct the search***.

28    ///

70.    The search of Plaintiff and CLASS members was unreasonable, without reasonable suspicion, violated California regulations addressing searches of prison visitors, and violated Plaintiff and CLASS members' Fourth Amendment right to be free of unreasonable searches.

71.    Plaintiff is informed and believes and thereon alleges that random strip searching is a common practice at Prison.  The acts of Defendants were the proximate cause and moving force in the deprivation of Plaintiff and CLASS members' Fourth Amendment rights.

72.    In so searching Plaintiff and CLASS members, and in causing the search of Plaintiff and CLASS members, Defendants acted under color of law.

73.    During the CLASS PERIOD, it was clearly established in the Ninth Circuit and all other circuits that strip searches of prison visitors are permissible only when prison officials can point to specific objective facts and rational inferences establishing individualized reasonable suspicion to believe that the person targeted for the strip search will attempt to smuggle contraband by secreting and carrying it on his or her person.

## II.

## SECOND CAUSE OF ACTION

## VIOLATION OF FOURTH AMENDMENT—SEARCH WITHOUT REASONABLE SUSPICION

## [42 U.S.C. § 1983]

(By Plaintiff and CLASS Against Defendants POLLARD and DOE 1)

74.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 45 as though fully set forth herein.

75.    Defendant POLLARD is the Prison Warden.  Defendant DOE 1 was his immediate predecessor as Prison Warden.

76.    Defendants POLLARD and DOE 1 adopted and implemented a Prison policy or practice that requires Prison visitors to be randomly selected for an unclothed

strip search and offered the option of either submitting to an unclothed strip search or being denied the opportunity of visiting an inmate.

77.    POLLARD and DOE 1 adopted and implemented this policy or practice with deliberate difference to the Fourth Amendment rights of those visitors randomly selected for unclothed searches.

78.    During the CLASS PERIOD, it was clearly established in the Ninth Circuit and all other circuits that strip searches of prison visitors are permissible only when prison officials can point to specific objective facts and rational inferences establishing individualized reasonable suspicion to believe that the person targeted for the strip search will attempt to smuggle contraband by secreting and carrying it on his or her person.

79.    On September 28, 2019, and consistent with the policy or practice of Defendants POLLARD and DOE 1, Defendant LITTLE randomly selected Plaintiff for an unclothed strip search.

80.    Defendants had no reasonable suspicion to believe that Plaintiff was going to attempt to smuggle contraband into the Prison, that she committed a crime, or that she intended to commit a crime.

81.    Defendant LITTLE represented to Plaintiff that she must submit to an unclothed search or that she would not be permitted to visit ROBERTS.

82.    Defendants did not offer Plaintiff less-intrusive-search options such as a metal detector, hand-held wand, electronic drug detector, ION scanner, canine search, or clothed-body search.

83.    No one at the Prison explained to Plaintiff what an unclothed search entails.  Plaintiff assumed the search would require removing her top and pants and being patted down to search for guns and contraband. Nowhere on the form did it state that the search would include invasive measures such as requiring her to spread her butt checks and cough multiple times while a guard visually inspected her "private parts."

///

1    84.    LITTLE produced a Notice of Request for Search form. Plaintiff
2    acquiesced to the search and signed the form because she wanted to see ROBERTS.

3    85.    LITTLE, on the other hand, did not sign the Notice of Request for Search
4    form. Plaintiff is informed and believes and thereon alleges that none of LITTLE's
5    supervisors signed the Notice of Request for Search form in advance of the search. The
6    Notice of Request for Search form was signed after the search was completed.

7    86.    LITTLE summoned Defendant JACKSON from the visitor area in Yard
8    "E."

9    87.    LITTLE grabbed a container and, with JACKSON, led Plaintiff into a
10    small room about the size of a walk-in closet. LITTLE instructed Plaintiff to turn
11    around, face the wall, and remove each item of clothing. As Plaintiff removed her
12    clothes, LITTLE patted each item down as she put it into the container. JACKSON
13    stood by the door and looked uncomfortable.

14    88.    When Plaintiff removed everything except for her underwear, and LITTLE
15    continued to request the removal of further garments, Plaintiff asked LITTLE what was
16    going on.

17    89.    LITTLE represented that everything had to be removed so that a body-
18    cavity search could be performed. LITTLE instructed Plaintiff to bend over, spread her
19    butt cheeks, and cough. LITTLE then instructed Plaintiff to lift her breasts. LITTLE
20    found nothing.

21    90.    After Plaintiff was strip searched, she was advised by another Prison visitor
22    that such a search was common practice and that she too had to undergo a strip search
23    before she was permitted to visit an inmate.

24    91.    In so searching Plaintiff and CLASS members, and in causing the search of
25    Plaintiff and CLASS members, Defendants acted under color of law.

26    92.    The proximate cause of, and moving force behind, the unclothed searches
27    of Plaintiff and CLASS members was the policy or practice of Defendants POLLARD
28    and DOE 1 to randomly select Prison visitors for unclothed searches.

1    93.    The search of Plaintiff and CLASS members is unreasonable, without

2    reasonable suspicion, and violated Plaintiff and CLASS members' Fourth Amendment

3    right to be free of unreasonable searches.

**III.**

**THIRD CAUSE OF ACTION**

**VIOLATION OF FOURTH AMENDMENT—FAILURE TO**

**TRAIN AND SUPERVISE**

**[42 U.S.C. § 1983]**

(By Plaintiff and CLASS Against Defendants POLLARD and DOE 1)

10    94.    Plaintiff incorporates by reference the allegations contained in paragraphs 1

11    through 45 as though fully set forth herein.

12    95.    Defendant POLLARD is the Prison Warden. Defendant DOE 1 was his

13    immediate predecessor as Prison Warden.

14    96.    During the CLASS PERIOD, it was clearly established in the Ninth Circuit

15    and all other circuits that strip searches of prison visitors are permissible only when

16    prison officials can point to specific objective facts and rational inferences establishing

17    individualized reasonable suspicion to believe that the person targeted for the strip

18    search will attempt to smuggle contraband by secreting and carrying it on his or her

19    person.

20    97.    During the CLASS PERIOD, in deliberate indifference to the Fourth

21    Amendment rights of Prison visitors, and with reckless disregard for the Fourth

22    Amendment rights of Prison visitors, Defendants POLLARD and DOE 1 failed to train

23    and supervise Prison corrections officers in the Constitutional requirements for

24    unclothed searches of visitors.

25    98.    On September 28, 2019, as a proximate result of the lack of training and

26    supervision at Prison, Defendant LITTLE randomly selected Plaintiff for an unclothed

27    search.

28    ///

99.    Defendants had no reasonable suspicion that Plaintiff was going to attempt to smuggle contraband into the Prison, that she committed a crime, or that she intended to commit a crime.

100.    Defendant LITTLE represented to Plaintiff that she must submit to an unclothed search or that she would not be permitted to visit ROBERTS.

101.    Defendants did not offer Plaintiff less-intrusive-search options such as a metal detector, hand-held wand, electronic drug detector, ION scanner, canine search, or clothed-body search.

102.    No one at the Prison explained to Plaintiff what an unclothed search entails. Plaintiff assumed the search would require removing her top and pants and being patted down to search for guns and contraband. Nowhere on the form did it state that the search would include invasive measures such as requiring her to spread her butt checks and cough multiple times while a guard visually inspected her "private parts."

103.    Defendants conduct invasive strip and visual body-cavity searches pursuant to a policy or practice that does not require any particularized suspicion that the visitor is concealing anything in his/her body cavity.

104.    LITTLE produced a Notice of Request for Search form. Plaintiff acquiesced to the search and signed the form because she wanted to see ROBERTS.

105.    LITTLE, on the other hand, did not sign the Notice of Request for Search form. Plaintiff is informed and believes and thereon alleges that none of LITTLE's supervisors signed the Notice of Request for Search form in advance of the search. The Notice of Request for Search form was signed after the search was completed.

106.    LITTLE summoned Defendant JACKSON from the visitor area in Yard "E."

107.    LITTLE grabbed a container and, with JACKSON, led Plaintiff into a small room about the size of a walk-in closet. LITTLE instructed Plaintiff to turn around, face the wall, and remove each item of clothing. As Plaintiff removed her
///

1   clothes, LITTLE patted each item down as she put it into the container.  JACKSON
2   stood by the door and looked uncomfortable.

3   108.  When Plaintiff removed everything except for her underwear, and LITTLE
4   continued to request the removal of further garments, Plaintiff asked LITTLE what was
5   going on.

6   109.  LITTLE represented that everything had to be removed so that a body-
7   cavity search could be performed.  LITTLE instructed Plaintiff to bend over, spread her
8   butt cheeks, and cough.  LITTLE then instructed Plaintiff to lift her breasts.  LITTLE
9   found nothing.

10   110.  After Plaintiff was strip searched, she was advised by another Prison visitor
11   that such a search was common practice and that she too had to undergo a strip search
12   before she was permitted to visit an inmate.

13   111.  In so searching Plaintiff and CLASS members, and in causing the search of
14   Plaintiff and CLASS members, Defendants acted under color of law.

15   112.  The proximate cause of, and moving force behind, the unclothed search of
16   Plaintiff and CLASS members was the lack of training and supervision at Prison
17   regarding the Constitutional requirements of unclothed visitor searches.

18                                      **IV.**
19                         **FOURTH CAUSE OF ACTION**
20           **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
21                  (By Plaintiff and CLASS Against All Defendants)

22   113.  Plaintiff incorporates by reference the allegations contained in paragraphs 1
23   through 45 as though fully set forth herein.

24   114.  On September 28, 2019, Defendant LITTLE represented to Plaintiff that
25   she must submit to an unclothed search or that she would not be permitted to visit
26   ROBERTS.

27   115.  LITTLE did not explain to Plaintiff what an unclothed search entails.
28   Plaintiff assumed the search would require removing her top and pants and being patted

down to search for guns and contraband. Nowhere on the form did it state that the search would include invasive measures such as requiring her to spread her butt checks and cough multiple times while a guard visually inspected her "private parts."

116.    Defendants had no reasonable suspicion to believe that Plaintiff was going to attempt to smuggle contraband into the Prison, that she committed a crime, or that she intended to commit a crime.

117.    Defendants did not offer Plaintiff less-intrusive-search options such as a metal detector, hand-held wand, electronic drug detector, ION scanner, canine search, or clothed-body search.

118.    Plaintiff is informed and believes and thereon alleges that LITTLE desired to humiliate and embarrass Plaintiff and cause Plaintiff severe emotional distress.

119.    LITTLE summoned Defendant JACKSON from the visitor area in Yard "E."

120.    Plaintiff is informed and believes that JACKSON agreed to aid and abet LITTLE in an unlawful strip search to humiliate and embarrass Plaintiff.

121.    LITTLE grabbed a container and, with JACKSON, led Plaintiff into a small room about the size of a walk-in closet. LITTLE instructed Plaintiff to turn around, face the wall, and remove each item of clothing. As Plaintiff removed her clothes, LITTLE patted each item down as she put it into the container.

122.    JACKSON stood by the door so that no one could enter.

123.    When Plaintiff removed everything except for her underwear, and LITTLE continued to request the removal of further garments, Plaintiff asked LITTLE what was going on.

124.    LITTLE represented, with the intention of causing, or the reckless disregard of the probability of causing, severe emotional distress, that everything had to be removed so that a body-cavity search could be performed. LITTLE instructed Plaintiff to bend over, spread her butt cheeks, and cough. LITTLE then instructed Plaintiff to lift her breasts.

125.    After Plaintiff was strip searched, she was advised by another Prison visitor that such a search was common practice and that she too had to undergo a strip search before she was permitted to visit an inmate.

126.    As a proximate result of her search, Plaintiff and CLASS members suffered severe humiliation, embarrassment, and emotional distress.

127.    Plaintiff is informed and believes that Defendants POLLARD, MOORE, CRUZ, and DOES 1-10 subsequently approved and ratified the actions of LITTLE and JACKSON and the strip search of Plaintiff and CLASS members.

128.    The conduct of Defendants is so extreme and outrageous as to exceed all bounds of that usually tolerated in a civilized community.

## V.

## FIFTH CAUSE OF ACTION

## NEGLIGENCE

**[Cal. Government Code § 815.6; Cal. Code of Regulations, Title 15, §§ 3173.2]**

(By Plaintiff and CLASS Against All Defendants)

129.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 45 as though fully set forth herein.

130.    *California Code of Regulations*, title 15, section 3173.2, is an enactment that regulates the searches and inspections of prison visitors.

131.    *California Code of Regulations*, title 15, section 3173.2(d)(7) states:

> Unclothed body search: An unclothed body search is a security procedure that involves visual inspection of a person's body with all of their clothing removed and a thorough inspection of the person's clothing for the purpose of detecting contraband. This procedure may be conducted with the visitor's consent *when there is a reasonable suspicion* that the visitor is carrying contraband *and when no less intrusive means are available* to conduct the search.

132.    *California Code of Regulations,* title 15, section 3173.2(c)(3)(G) states: "All requests for unclothed/clothed body searches, the reason for the request, and the specific fact on which the search is based shall be documented on CDCR Form 888 (Rev. 04/15), Notice of Request for Search, which is incorporated by reference."

1    133.   *California Code of Regulations*, title 15, section 3173.2(c)(3)(G) and (d)(7)
2    create mandatory duties.

3    134.   Defendants breached the mandatory duty in section 3173.2(d)(7) in that
4    Defendants did not use less-intrusive search means before representing to Plaintiff and
5    CLASS members that they must submit to an unclothed strip and body cavity search or
6    they would not be permitted to visit Prison inmates.

7    135.   Defendants breached the mandatory duty in section 3173.2(c)(3)(G) in that
8    Defendants did not state on a Notice of Request for Search form the reason for the
9    unclothed strip and body cavity search and the specific facts on which the search is
10   based.

11   136.   The duties created by *California Code of Regulations*, title 15, section
12   3173.2(c)(3)(G) and (d)(7) were designed to protect prison visitors such as Plaintiff and
13   Class members, from intrusive unclothed searches that are unsupported by specific
14   objective facts and rational inferences establishing individualized reasonable suspicion
15   to believe that the person targeted for the strip search will attempt to smuggle
16   contraband by secreting and carrying it on his or her person.

17   137.   The duties created by *California Code of Regulations*, title 15, section
18   3173.2(c)(3)(G) and (d)(7) were designed to protect against the kind of injuries suffered
19   by Plaintiff and CLASS members.

20   138.   Plaintiff and CLASS members are approved visitors to California prisons
21   and are members of the class of persons *California Code of Regulations*, title 15,
22   sections 3173 and 3173.2 were designed to protect.

23   139.   Defendants' breach of the duties created by *California Code of*
24   *Regulations*, title 15, section 3173.2(c)(3)(G) and (d)(7) proximately caused injuries to
25   Plaintiff and CLASS members.

26   ///
27   ///
28   ///

THEREFORE, Plaintiff prays for judgment against Defendants as follows:

**ON THE CLASS-ACTION ALLEGATIONS**

1.      For an order certifying the Complaint as a class action; and

2.      For an order appointing Plaintiff as representative of CLASS and Plaintiff's counsel as CLASS counsel.

**ON THE FIRST CAUSE OF ACTION (42 U.S.C. § 1983; SEARCH WITHOUT REASONABLE SUSPICION**

3.      For general and special damages;

4.      For a preliminary and permanent injunction barring Defendants from performing further random unclothed searches of visitors to the Richard J. Donovan Correctional Facility;

5.      For punitive damages;

6.      For attorney fees pursuant to 42 U.S.C. § 1988;

7.      For costs of suit; and

8.      For such other and further relief as the court deems proper.

**ON THE SECOND CAUSE OF ACTION (42 U.S.C. § 1983; SEARCH WITHOUT REASONABLE SUSPICION**

9.      For general and special damages;

10.     For a preliminary and permanent injunction barring Defendants from performing further random unclothed searches of visitors to the Richard J. Donovan Correctional Facility;

11.     For punitive damages;

12.     For attorney fees pursuant to 42 U.S.C. § 1988;

13.     For costs of suit; and

14.     For such other and further relief as the court deems proper.

///

///

///

1    **ON THE THIRD CAUSE OF ACTION (FAILURE TO TRAIN AND**

2    **SUPERVISE)**

3         15.   For general and special damages;

4         16.   For punitive damages;

5         17.   For attorney fees pursuant to 42 U.S.C. § 1988;

6         18.   For costs of suit; and

7         19.   For such other and further relief as the court deems proper.

8    **ON THE FOURTH CAUSE OF ACTION (INTENTIONAL INFLICTION OF**

9    **EMOTIONAL DISTRESS)**

10        20.   For general and special damages;

11        21.   For punitive damages;

12        22.   For costs of suit; and

13        23.   For such other and further relief as the court deems proper.

14   **ON THE FIFTH CAUSE OF ACTION (NEGLIGENCE)**

15        24.   For general and special damages;

16        25.   For costs of suit; and

17        26.   For such other and further relief as the court deems proper.

18

19                             SKAPIK LAW GROUP

20

21

22   Dated: May 4, 2020             By:

23                             Geralyn L. Skapik

                              Mark J. Skapik

24                             Blair J. Berkley

                            Attorneys for Plaintiff

25                             RHONDA R.

                          FITZGERALD

26

27

28

-21-
COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2    Plaintiff hereby demands trial by jury.

3

4                                                    SKAPIK LAW GROUP

5

6

7    Dated: May 4, 2020                By:

8                                          Geralyn L. Skapik
                                           Mark J. Skapik
9                                          Blair J. Berkley
                                           Attorneys for Plaintiff
10                                         RHONDA R.
                                           FITZGERALD

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28