1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9            SOUTHERN DISTRICT OF CALIFORNIA
10

11   RHONDA FITZGERALD, an individual          Case No.:  3:20-cv-848-JM-(MSB)
     and on behalf of all persons similarly
12   situated,                                  **ORDER GRANTING PRELIMINARY
                                                APPROVAL OF CLASS ACTION
13                          Plaintiff,          SETTLEMENT AND FORM OF
                                                NOTICE**
14   v.

15   MARCUS POLLARD, et al,

16                          Defendants.

17

18        Presently before the court is the Parties' Joint Motion for Preliminary Approval of

19   Class Action Settlement.  (Doc. No. 156.)  A hearing on the motion was held on June 17,

20   2024.  For the reasons set forth on the record, and as explained in more detail below, the

21   motion is **granted**.

22        **I.      BACKGROUND**

23            **A.  FACTUAL AND PROCEDURAL BACKGROUND**

24        This federal civil rights action (42 U.S.C. §1983) with pendant state claims arises

25   out of an unclothed body search (intermittently referred to herein as a "strip search") of

26   Plaintiff Rhonda Fitzgerald that occurred on September 28, 2019, when she visited the

27   Richard J. Donovan Correctional Facility ("RJD") to see her friend, inmate Christopher

28   Roberts.  (Doc. No. 1, ¶¶ 2, 13.)

1

On May 5, 2020, Ms. Fitzgerald filed this suit in district court, pursuant to 42 U.S.C. section 1983, alleging that Defendants Marcus Pollard, Lieutenant C. Moore, Sergeant H. Cruz, Officer Jackson and Officer Mann-Little (collectively "Defendants") violated her civil rights and committed torts against her.  (Doc. No. 1.)

In the Complaint, Plaintiff asserted: (1) a claim for violation of her Fourth Amendment right - search without reasonable suspicion against all Defendants; (2) a claim for violation of her Fourth Amendment right - search without reasonable suspicion against Defendant Pollard and Doe 1; and (3) a claim for violation of the Fourth Amendment - failure to train and supervise, against Defendant Pollard and Doe 1.  (Doc. No. 1 at 8-16.) Plaintiff also brought state law claims for intentional infliction of emotional distress and negligence, against all Defendants.  (*Id.* at 16-19.)

In the Complaint Plaintiff sought to represent a class consisting of:

*those visitors to the Richard J. Donovan Correctional Facility in the Class Period[1] who were required to submit to an unclothed search as a condition to visiting an inmate and whose Notice of Request for Search Form states no specific objective facts and rational inferences establishing individualized reasonable suspicion to believe that the person targeted for the search had an intention of smuggling contraband into the Prison.*

*Id.*  ¶ 38.

Plaintiff sought injunctive relief barring Defendants from performing further random unclothed searches of visitors at the prison, money damages, and attorney fees and costs. (*Id.* at 20-21.)

On June 1, 2021, Defendants filed an early Motion for Summary Judgment (Doc. No. 41) that was denied by the court (Doc. No. 55).

On July 21, 2022, Plaintiff filed a Motion for Class Certification.  (Doc. No. 66.)  On October 17, 2022 the court held oral argument on Plaintiff's class certification motion.

---

[1] The Complaint defines the class period as running "from two years prior to the filing date of this action to the present date."  Doc. No. 1, ¶ 37.

Subsequently, this court issued an Order on November 3, 2022, certifying the following class:

> Those visitors, from May 5, 2018 to the present, to the Richard J. Donovan Correctional Facility who were required to submit to an unclothed search as a condition to visiting an inmate and were so searched in the absence of individualized reasonable suspicion to believe that the visitor intended to smuggle contraband into the Prison, as evidenced by a failure to provide the basis for the search on a Form 888 – Notice of Request For Search.

Doc. No. 82 at 5[2]. The Parties agree that over 300 individuals received the Notice of Class Action ("Publication Notice"). (Doc. No. 116-3 at 388-397; *see also* Doc. No. 131-1 at 3-105.)

On January 15, 2024, Plaintiff filed a Motion for Partial Summary Judgment, (Doc. No. 116) that was granted-in-part and denied-in-part by the court (Doc. No. 137).

On February 14, 2024, Defendants filed a Motion to Decertify the Class (Doc. No. 132) that the court denied (Doc. No. 142).

The Parties exchanged numerous settlement proposals in an attempt to resolve this matter, without success. On April 19, 2024, the Parties participated in a Settlement Conference before Magistrate Judge Michael Berg. (Doc. No. 149). This conference and subsequent arms-length negotiations resulted in the proposed settlement currently before the court.

### B. Settlement Agreement Terms

The settlement agreement ("Agreement") (*see* Doc. No. 156 at 26-47) defines the class as:

---

[2] On November 17, 2022, Defendants filed a Motion for Reconsideration of Order on Motion for Class Certification (Doc. No. 85) that was subsequently denied by the court (Doc. No. 91). Defendants' petition for permission to appeal this court's November 3, 2022 order granting class certification was denied by the Ninth Circuit Court of Appeals on March 29, 2023 (Doc. No. 97).

*those visitors from May 5, 2018 to the present, to the Richard J. Donovan Correctional Facility who were required to submit to an unclothed search as a condition to visiting an inmate and were so searched in the absence of individualized reasonable suspicion to believe that the visitor intended to smuggle contraband into the Prison, as evidenced by a failure to provide the basis for the search on a Form 888 – Notice of Request For Search.*

Doc. No. 156 at 31, ¶ II.D.

"Class" and "settlement class" are defined to mean the 333 visitors[3] to RJD, from May 5, 2018 to November 3, 2022. *Id*. at 27, ¶ I.G. Additionally, the Parties estimate that approximately 622 searches are at issue in this case. *Id.* at 35.

Under the Agreement, class members' damages will be determined based upon a point system, defined as follows:

1. *A Group 1 Class Member will be allocated **5 POINTS** for each search where the Class Member was escorted to a room by the visiting officers and asked to remove all of his/her clothing and became completely naked so that their body could be inspected by the visiting officers before being allowed to visit an inmate.*

2. *A Group 2 Class Member will be allocated **3 POINTS** for each search where the Class Member was escorted to a room by the visiting officers and asked to completely remove either his/her pants, including a[sic] underwear, or his/her blouse or top, including a bra, exposing their breast or the lower part of his/her body, so that your [sic]body could be inspected by the visiting officers before being allowed to visit an inmate.*

3. *A Group 3 Class Member will be allocated **1 POINTS**[sic]  for each search where the Class Member was escorted to a room by the visiting officers and asked to move an article of clothing so that the visiting officer could inspect that*

---

[3] Class Counsel, by way of a declaration, attests that after the June 2023 Class Action Notice was mailed, two (2) additional putative class members were discovered and provided with the Class Action Notice and Exclusion Request Form, taking the class size to 335.  Subsequently, four putative class members submitted Exclusion Request Forms, making the class size 331.  Doc. No. 156-2, ¶¶ 42, 44.  Notwithstanding this information, the Settlement Agreement, drafted in June 2024, defines the settlement class as 333 (Doc. No. 156 at 27, ¶ I.G.)  Per the terms of the Agreement, the court will refer to the class size as 333.

> *area of their body, for example[4], where the Class Member was asked to pull down their pants or move their top so that a surgery scar or something else at that body location, could be viewed before being allowed to visit an inmate.*

Doc. No. 156 at 34-45, ¶IV.G

The Agreement requires Defendants pay a gross settlement amount of $3,500,000, allocated as follows: $25,000 as an incentive award for Plaintiff, no greater than 40%, $1,400,000, of the Settlement Fund anticipated to be attorneys' fees, and reimbursement of litigation costs not to exceed $55,000.  *Id.*  ¶¶ I.T, IV.A, D-F.  Under the terms of the Settlement, Simpluris will be used as the Settlement Administrator and will be paid $30,000 from the Settlement Fund. *Id.* ¶¶ I.GG, VI.A.

Settlement class members have one-hundred-and-eighty (180) days after their checks are issued to cash them.  *Id.* at 36, ¶ V.H.  Any remaining amounts left in the Settlement Fund, including those resulting from uncashed or returned checks, shall be redistributed on a pro rata basis to all class members who properly and timely made claims for money damages. *Id.* ¶ V.I.

In exchange for their share of the Settlement Fund, all class members are deemed to release Defendants, or Released Parties[5], from claims relating to the subject matter of this action, arising under federal, state and/or local law, statute, ordinance, regulation, common

---

[4] To avoid a fragmented sentence, the court altered the punctuation in this paragraph from how it appears in the Agreement.

[5] Per the Agreement: "'Released Parties'" or 'Released Persons' means California Department of Corrections and Rehabilitation ("CDCR"), Defendants and its respective predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, related or affiliated entities and agencies, whether named or unnamed and whether served or unserved, and any and all of their past and present employees, executives, officers, directors, agents, representatives, and attorneys.  The term "Released Parties" or "Related Persons" expressly includes, but is not limited to, the State of California and its departments, divisions and agencies and the named Defendants, C. Moore, M. Pollard, A. Jackson, C. Mann-Little, and H. Cruz." Doc. No. 156 at 30, ¶ I.CC.

law, or other source of law, arising out of, or related to any allegations in the Complaint. *Id*. at 41, ¶ VIII.A.

## II.    DISCUSSION

### A. Preliminary Approval of Settlement and Federal Rule of Civil Procedure 23(e)

Having previously certified the class (*see generally,* Doc. No. 82), the court need only make the preliminary determination as to whether the proposed settlement is "fair, reasonable, and adequate" pursuant to Rule 23(e)(2).

When reviewing a proposed settlement, the court's primary concern "is the protection of those class members, including the named plaintiff, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.,* 688 F.2d 615, 624 (9th Cir 1982). Ultimately, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 526 (C.D. Cal. 2004).

In making the determination of whether the proposed settlement is fundamentally "fair, adequate and reasonable," the court is required to "evaluate the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.* 696 F.3d 811, 818-19 (9th Cir. 2012). Because a "settlement is the offspring of compromise, the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011).

Traditionally, district courts within the Ninth Circuit balance several factors when assessing a settlement proposal, namely:

the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of

6

counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026.

As amended, Rule 23(e) provides that a court may approve a proposed class action settlement after considering whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Since the court is unable to completely assess all factors until after the final approval hearing, "[a]t the preliminary approval stage, a full fairness analysis is unnecessary." *Zepeda v. Paypal, Inc.,* No. C 10-1668 SBA, 2014 WL 718509, at *4 (N.D. Cal. Feb. 24, 2014) (internal quotation marks and citation omitted). Thus, "[c]loser scrutiny is reserved for the final approval hearing." *Sciortino v. PepsiCo, Inc.,* No. 14-cv-00478-EMC, 2016 WL 3519179, at *4 (N.D. Cal. June 28, 2016).

### 1. Adequacy of Notice

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. For the court to approve a settlement, "[t]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice,* 688 F.2d at 624 (citation omitted).

Previously, the court approved the Publication Notice informing the putative class members that if they submitted an Exclusion Request Form (attached to the Publication Notice) they could opt out of the class. The Publication Notice also advised: "[i]f you do

nothing, you will stay in this lawsuit and be bound by the outcome.  You will also give up your right to sue on your own behalf."[6]  This Publication Notice explicitly notified class members that they had the opportunity to remain part of the litigation or seek exclusion, meaning no "second-chance" opt-out opportunity is now required.  *See Low v. Trump Univ., LLC*, 881 F.3d 1111, 1122 n.6 (9th Cir. 2018) (noting that Federal Rule of Civil Procedure 23(e)(4) does not "impose a per se rule mandating a settlement-stage opt-out opportunity in any case where members of a previously-certified class later learn of a settlement's actual value," and explaining that the Rule's "language anticipates that parties can reach a settlement agreement that does not permit an additional opt-out opportunity.").

Class members will receive the Notice of Settlement and accompanying claim form, via First Class U.S. Mail, postage pre-paid.  (Doc. No. 156 at 37, ¶ VI.D.)  The Settlement Administrator hopes to contact all reasonably identifiable class members by processing all known addresses through the Unites States Postal Service ("USPS") National Change of Address System to increase mail deliverability and accuracy.  (*Id.*)  A skip trace will be run on settlement notices that are returned as undeliverable.  (*Id.*)  Additionally, the Settlement Administrator intends to implement a Settlement Website and toll-free hotline dedicated to informing class members of their rights and options under the Settlement.  (*Id.*  ¶ VI.E.2.)

Thus, the court agrees that the Notice Plan "is the best notice that is practicable under the circumstances" and that a review of the Notice itself indicates that it contains all of the information usually contained in such documents.

## 2.  Adequate Representation

Next, the court considers whether "the class representatives and class counsel have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A).

Plaintiff's counsel are experienced attorneys in complex litigation, including class actions and federal civil rights.  (*See* Doc. No. 156-2, ¶ 8.)  Plaintiff has been actively

---

[6] As a result of the Publication Notice, four (4) putative class members submitted Exclusion Request Forms.  Doc. No. 156-2, ¶ 44.

involved in this litigation since its inception, and no evidence of a conflict between Plaintiff or her counsel and the rest of the settlement class has been presented.  Thus, pursuant to Rule 23(e), the court finds that Plaintiff and his counsel will fairly and adequately protect the interests of the settlement classes.  *See In re: Cathode Ray Tube (CRT) AntiTrust Litig.,* No. 07- cv- 05944-JST, 2020 WL 1873554, at *8 (N.D. Cal. Mar 11, 2020) (concluding Rule 23(e)(2)(A) satisfied where "Plaintiffs have demonstrated that the representative parties and their counsel will fairly and adequately protect the interests of the [] Classes.").

### 3.  Arm's Length Negotiations

Rule 23(e)(2)(B) requires the court to consider whether "the proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).

Here, the Parties participated in a Settlement Conference before Magistrate Judge Berg.  This conference and subsequent arms-length negotiations culminated in the Agreement before the court.  (Doc. No 156, 11.)  The fact that the settlement was reached after extensive discovery was completed and with the help of a third-party neutral weighs against collusion and in favor of preliminary approving the settlement.  *See* Fed. R. Civ. P. 23(e)(2)(C).  *See also Loreto v. Gen. Dynamics Info. Tech., Inc.,* No. 3:19-cv-01366-GPC-MSB, 2021 WL 3141208, at *4 (S.D. Cal. July 26, 2021) (concluding this factor is likely satisfied as the settlement was "the result of an arm's length negotiation facilitated by an experienced mediator after the exchange of sufficient discovery to allow the parties to ascertain Defendant's potential exposure").

Accordingly, for preliminary approval purposes, this factor weighs in favor of settlement.

### i.  *Consideration of the views of counsel*

The court also considers "the experience and views of counsel."  *Hanlon*, 150 F.3d at 1026.  Here, Ms. Skapik, on behalf of Class Counsel, advocates in favor of settlement, writing that Defendants' consistent denials of all material allegations and liability, and their own independent investigation and evaluation, led her to believe "that the settlement with the Defendants for the consideration and terms set forth in the Settlement Agreement is

fair, reasonable, and adequate and is in the best interests of the class in light of all known facts and circumstances….”  Doc. No. 156-2 at ¶ 31.  Class Counsel’s experience in litigating class action lawsuits and federal civil right lawsuits is set forth in Ms. Skapik’s declaration.  (*See id.* ¶¶ 8-9.)  Accordingly, given the complexity of this litigation and the experience of counsel, for preliminary approval purposes, this factor weighs in favor of settlement.

### 4.  Adequacy of Relief Provided to the Class

#### i.  *Strength of Plaintiff’s case and costs, risks and delay of trial and appeal*

When assessing “the costs, risks, and delay of trial and appeal,” Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate “the strength of plaintiff’s case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial.”  *Hanlon,* 150 F.3d at 1026.  “The extent of discovery may be relevant in determining the adequacy of the parties’ knowledge of the case.”  *Nat’l Rural Telecomms. Coop. v.* 221 F.R.D. at 527 (citation omitted).

Significant time and resources have already been dedicated to litigating this action.  There have been multiple rounds of briefing on the issues of class certification and motions for summary judgment have been ruled on by the court, with the case settling only two months before trial was set to begin.  *See Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1302 (S.D. Cal. Mar. 31, 2017) (“Where a case is near trial, and the parties have conducted extensive discovery and thoroughly litigated the issues, the extent of discovery and the stage of the proceedings weigh in favor of settlement.”) (internal quotations and citation omitted).   This has resulted in Class Counsel expending $55,000 in litigation expenses.  Throughout this litigation, Defendants have also vigorously defended against Plaintiff’s claims.  Thus, the risks of continuing this litigation are known to all involved.  Accordingly, for preliminary approval purposes, this factor weighs in favor of settlement.

///

///

### ii. Effectiveness of any proposed distribution method

The court must also consider "the effectiveness of any proposed methods of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). "Basic to [the process of deciding whether a proposed settlement is fair, reasonable and adequate] * * * is the need to compare the terms of the compromise with the likely rewards of litigation." *In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 422 (N.D. Cal. 2009) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted).

The papers make it clear that the $3,500,000 settlement amount will only be used to pay: (1) the submitted claims of the 333 settlement class members; (2) Simpluris, the Settlement Administrator; (3) any amounts that may be awarded as service representative fees; and (4) Class Counsel for any award of attorneys' fees, costs and expenses incurred in this action. After all the proposed payments are deducted from the Settlement Fund, the remaining amount is estimated to be approximately $1,900,000.

Each class member will receive a payout based upon the number of alleged unconstitutional searches they were subjected to and the level of intrusiveness of each search. Each of the three search types, Groups 1 – 3, have been allocated points: 5 points for a Group 1 search, 3 points for a Group 2 search and 1 point for a Group 3 search. The Parties estimate that 622 searches were performed on the 333 settlement class members. (Doc. No. 156 at 9.) From the 622 searches at issue, it is extrapolated that 500 will fall into Group 1, 31 will fall into Group 2 and 91 will fall into Group 3. Class members subjected to a Group 1 search are projected to receive $3,500 per search. (*Id.*) Class members subjected to a Group 2 search are projected to receive $2,150 per search. (*Id.*) And class members who were subjected to a Group 3 search are projected to receive approximately $720 per search. (*Id.*) Put another way, each point earned is projected to

equate to approximately $720.  This provides meaningful and direct recovery to class members.

As set forth above, the Settlement Administrator will mail the Notice, postage prepaid, to all individuals in the settlement class.  (Doc. No. 156 at 37, ¶ VI.D.)  The Settlement Administrator shall process the addresses provided through the USPS National Change of Address System to increase mail deliverability and accuracy.  (*Id.*)  All returned Notices will be remailed, and any Notices that are returned as undeliverable will be subjected to skip tracing.  (*Id.*)  A Settlement Website will also be created and maintained by the Settlement Administrator.  (*Id.* ¶ VI.E.2.)

To receive any money from the Settlement Administrator, class members are required to fill out and return the Proof of Claim and Release Form.  (*See id.* at 49-54.) The Claim Form itself contains a portion regarding claimant identification, (section C), that states: "RJD records identify that for [class member's name] there are [number of forms] Notice of Request 888 Forms which indicate that you were subjected to a search."  (*Id*. at 50).  The next page requires claimant to answer the following 3 questions by marking yes or no:

- When visiting an inmate at RJD facility, were you ever escorted to a room by the visiting officers and asked to remove all your clothing where you were completely naked so that your body could be inspected by the visiting officers before being allowed to visit an inmate?
- When visiting an inmate at RJD facility, were you ever escorted to a room by the visiting officers and asked to completely remove either your pants, including your underwear, or you blouse or top, including your bra, exposing your breast or the lower part of you body, so that your body could be inspected by the visiting officers before being allowed to visit an inmate?
- When visiting an inmate at RJD facility, were you ever escorted to a room by the visiting officers and asked to move an article of clothing so that the visiting officer could inspect that area of your body?  For example, were you asked to pull down your pants or move your top so that a surgery scar or something else at that body location, could be viewed before being allowed to visit an inmate?

Doc. No. 156 at 51.  If the class member answers yes to any of the three questions they are asked: how many times did this occur?  (*Id.*)  The answers to the questions will be used in determining how many points each class member is allocated.

The proposed Claim Form also requires that it be signed under penalty of perjury, (*see id.* at 53).  However, as discussed at the hearing, the attestation requirement will be removed before being sent to class members.

The Settlement Administrator shall receive and process all Claims Forms and shall reject any forms that do not meet the submission requirements.  (*Id.* at 37, ¶ VI.E.13-15.) The Settlement Administrator shall notify the claimant if a Claim Form is deficient, setting forth the reasons why the Claim Form fails to comply with the terms of the Settlement.  (*Id.* ¶ VI.E.15.)  Additionally, the Settlement Notice advises class members: "Please contact the Settlement Administrator or Class Counsel if you disagree with any determinations made by the Settlement Administrator regarding your Proof of Claim."

Each class member's allocation of the Net Settlement Fund will be made in the form of paper checks.  The method of distributing relief is, therefore, simple, and effective and provides significant and immediate recovery for class members.  *See Walters v. Target Corp.*, No. 3- 16- CV01678-L-MDD, 2019 WL 6696192, at *7 (S.D. Cal. Dec. 6, 2019) (finding "the effectiveness of the proposed method for processing and distributing the class relief adequate because of its clear processing guidelines").  Accordingly, for preliminary approval purposes, this factor weighs in favor of settlement.

### 5.  Terms of Attorneys' Fees

As part of evaluating the settlement terms, the court must also consider "the terms of any proposed award of attorneys' fees" to determine "whether the attorneys' fees arrangement shortchanges the class."  *Briseno v. Henderson,* 998 F.3d 1014, 1024 (9th Cir. 2021) (in part quoting Fed. R. Civ. Pro. 23(e)(2)(C)(iii)).  Courts "must balance the proposed award of attorney's fees vis-à-vis the relief provided to the class in determining whether the settlement is adequate for class members."  *Id*.

Here, the Agreement provides that Class Counsel will not seek fees greater than $1,400,000 or 40% of the Settlement Fund.  (Doc. No. 156, ¶ IV.F.)  The Agreement also expressly states that it is not conditioned upon the court awarding a particular amount.  (*Id*.)  While the requested 40% is higher than the 25% benchmark figure, when evaluating the fee motion, the court will exercise its discretion and perform a crosscheck of the lodestar in this case to determine if this amount is reasonable.  In addition, the court expects Class Counsel to fully address the reasonableness of its requested award in their forthcoming motion for attorneys' fees.

The Agreement expressly states Defendants will not oppose Class Counsel's motion for attorneys' fees.  (*Id*.)  The concern with a "clear sailing" fee arrangement, like this one, is that class counsel may have obtained too small a recovery for the class "in exchange for red-carpet treatment on fees."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d. 935, 947 (9th Cir. 2011).  "When a district court encounters such a provision, it must 'peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class,' even when the settlement has been negotiated 'with a neutral mediator before turning to fees."  *Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021) (quoting *Bluetooth*, 654 F. 3d at 948).  Here, there is no evidence before the court that demonstrates that the class would have received more meaningful relief if Defendants had simply been permitted to oppose Class Counsel's fee application.  To the contrary, this case has been extensively litigated and hotly contested right up until two months before trial, with Class Counsel continuously putting the interests of the class above its own and negotiating a settlement that provides direct payment to class members in meaningful monetary amounts.  And the Parties resolved this case after attending a settlement conference overseen by Magistrate Judge Berg, an experienced mediator.  Moreover, the amount of fees the court ultimately determines is reasonable will not revert to Defendants and will be added to the Net Settlement Amount and be used for the benefit of class members.  (Doc. No. 156, ¶ IV.F); *cf. Bluetooth*, 654 F.3d at 949 (noting the unfairness of "kicker" provisions that allow reversion to defendant in the case of a lesser attorney's fee award).

Ultimately, although a clear sailing provision does, and typically should, raise the question of collusion, the court finds the process by which this settlement was reached is adequate to find, for preliminary approval purposes, that there is insufficient evidence of collusion to warrant denying the preliminary approval motion in its entirety.

### 6.  Equitable Treatment of Class Members

Rule 23(e) also requires examination as to whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P 23(e)(2)(D). Therefore, the court considers if the proposal "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed R. Civ. P. 23(e)(2)(D), advisory committee notes (2018 amendment).

As described above, all class members must submit a Claim Form in order to receive any cash payment.  Currently, the projected monetary sum each member may be awarded is based on the number of searches, and varying levels of intrusiveness of the searches themselves, that each member was forced to submit to.  This apportionment of relief appears to take appropriate account of the differences in the class members' potential claims.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058 JST, 2017 WL 2481782, at *5 (N.D. Cal. June 8, 2017) (court approved settlement distribution plan that "'fairly treats class members by awarding a *pro rata* share' to the class members based on the extent of their injuries.'") (quoting *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005)); *In re High-Tech Emp. Antitrust Litig.*, No. 11- CV- 02509-LHK, 2015 WL 5159441, at *8 (N.D. Cal. Sept. 2, 2015) (*pro rata* distribution of fractional share of settlement based upon the extent of each class member's injuries was "cost-effective, simple and fundamentally fair."); *Four in One Co. v. S.K. Foods, L.P.*, 2:08-CV-3017 KJM EFB, 2014 WL 4078232, at *15 (E.D. Cal. Aug.

14, 2014) (court approved "plan of allocation providing for a pro rata distribution of the net settlement fund based on verified claimants' volume of qualifying purchases" as "fair, adequate, and reasonable"); *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1045-46 (N.D. Cal. 2008) (securities class action settlement allocation approved on a "per-share basis").

Additionally, the Agreement and Notice Plan require the Settlement Administrator to use numerous steps to obtain current contact information for all settlement class members so that they can be issued payment. For any settlement class members whose Mail Notice is returned as undeliverable, the Settlement Administrator will run a skip trace in an attempt to obtain a current address and re-mail Settlement Notices to any current addresses located. (*See* Doc. No. 156 at 37 ¶ VI.D.)

Based on the above, the court finds that the Agreement likely provides equitable relief to all class members based on the loss they incurred as a result of Defendants' alleged actions. Accordingly, for preliminary approval purposes, this factor weighs in favor of settlement.

### i. *Equity between unnamed members and class representative*

The $25,000 service fee to be awarded to the named Plaintiff does not appear to be facially unreasonable nor does it render the settlement inequitable. The requested service award—along with attorneys' fees and Claims Administration fees upon court approval—will be deducted from the $3.5 million Settlement Fund. This represents a small portion of the Settlement Fund and is reasonable considering Plaintiff's participation in this litigation for over 4 years. *See Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 958-59 (9th Cir. 2009) (Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action."). At the final approval hearing Plaintiff must provide sufficient evidence to allow the court to evaluate her award "individually, using relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, ... [and] the amount of time and effort

the plaintiff expended in pursuing the litigation...."  *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003) (internal quotation marks omitted).

Because incentive awards are not per se unreasonable, for preliminary approval purposes, this factor weighs in favor of settlement. *See Rodriguez*, 563 F.3d at 958 (finding "[i]ncentive awards are fairly typical in class action cases").

### ii. Release

The Agreement contains a "Final Settlement Class Members' Release[7]" from claims relating to the subject matter of this action, arising under federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law, arising out of, or related to any allegations in the Complaint.  (Doc. No. 156 at 41, ¶ VIII.A.)

Relatedly, the "Release of Unknown Claims" states: "Class Representative and Final Settlement Class Members shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits conferred by Section 1542 of the California Civil Code . . . ." *Id.* at ¶ VIII.B.

The releases are appropriate as all the claims stem from the identical predicate facts, namely Defendants' alleged policy and practice of conducting unclothed searches of visitors to RJD, without having reasonable suspicion to do so, as a condition of the visitor being allowed access to the institution to visit an incarcerated person therein. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a

---

[7] Specifically, the Final Settlement Class Members' Release provides: "Plaintiff and Final Settlement Class Members release Defendants and Released Parties from any and all causes of action which Plaintiffs [sic] or any Class Member has against Defendants or the Released Parties as well as any and all claims, causes of action, damages, penalties, attorneys' fees, costs, and any other form of relief or remedy in law, equity, of whatever kind or nature and for any relief whatsoever, including monetary, injunctive, or declaratory relief, whether direct or indirect for any acts or omissions that were pled or could have been pled in the Action based on the facts, subject matter, or the factual or legal allegations in the Complaint or any amendment to the Complaint, including the Operative Complaint, regardless of whether such claims arise under federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law." Doc. No. 156 at 41, ¶ VIII.A.

party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (internal quotation marks omitted).

Accordingly, for preliminary approval purposes, this factor weighs in favor of settlement.

### 7. Government Actor

The presence of a governmental participant in the class action settlement generally weighs in favor of approving the settlement. *See J.L. v. Cuccinelli,* No. 18-cv-04914-NC, 2019 WL 6911973, at *3 (N.D. Cal. Dec. 18, 2019) (finding "the seventh Churchill factor weighs in favor of final approval. Various agencies and officers of the United States government are the Defendants and Defendants approve of the Settlement Agreement."); *Sigma Beta Xi, Inc. v. Cnty. of Riverside,* No. EDCV 18-1399 JGB (JEMx), 2019 WL 5151970, at *8 (C.D. Cal. Aug. 26, 2019)

Here, Defendants are various agents of the State of California and its corrections department who support the settlement. Accordingly, for preliminary approval purposes, this factor weighs in favor of settlement.

### 8. Relief Provided

"The relief that the settlement is expected to provide to class members is a central concern," despite not being specifically enumerated as a Rule 23(e) factor. 2018 Advisory Notes. The court, therefore, considers "the amount offered in the settlement." *Hanlon,* 150 F.3d at 1026.

Here, the Parties argue that the amount offered "is fair and reasonable under the circumstances of this case. The payout to each class member will be based upon the number of alleged unconstitutional searches they were subjected to and the intrusive nature of each search." Doc. No. 156 at 16.

The court agrees that the relief provided to the class is more than adequate. The estimated payout per search is approximately $700 per partially unclothed search and

$3,500 per fully unclothed search.  (Doc. No. 156 at 34, ¶ IV.D.)  These are not insignificant amounts.  Thus, for preliminary approval purposes, the monetary amount secured weighs in favor of settlement.

### 9.  Class Administrator Fees

Finally, the Court turns to the Parties' approximate fees related to the Settlement Administrator.  Under the terms of the settlement, the Settlement Administrator, Simpluris, will incur fees and cost, estimated "not to exceed" $30,000.  (Doc. No. 156 at 37.)  Absent from the briefing is a Projected Schedule of Fees and Charges from Simpluris. Nevertheless, based on its own familiarity and knowledge of the costs of administrating class action settlements, the court considers this projection to be reasonable.  However, in light of the absence of a fee proposal, the court cautions the Parties—and Simpluris—that it will closely scrutinize any settlement administration fees that exceed the estimated amount set forth in the papers.

## III.  CONCLUSION

In light of the foregoing, the Parties Joint Motion for Preliminary Approval of Class Action Settlement is **GRANTED**.  (Doc. No. 156.)  Accordingly, the court hereby **ORDERS** as follows:

**A.**    The court preliminarily finds that the provisions of the Class Action Settlement Agreement and Release (hereinafter "Agreement"), filed with the court as Exhibit A (Doc. No. 156 at 26-47) to the Joint Motion for Preliminary Approval of Class Action Settlement (Doc. No. 156) are fair, just, reasonable, and adequate and, therefore, meet the requirements for preliminary approval.

**B.**    For purposes of this Order, the court adopts all defined terms as set forth in the Agreement.

**C.**    In its Order on Class Certification, the court determined that Plaintiff was a suitable class representative.  Ms. Fitzgerald continues to be appointed as the Class Representative for the Settlement Class.

**D.**    Geralyn L. Skapik, Mark J. Skapik and Blair J. Berkley, of the Skapik Law Group, continue to be appointed as Class Counsel.

**E.**    The court appoints Simpluris as the Settlement Administrator.  The Settlement Administrator shall administer the notice procedures and distribute payments and shall abide by the terms of and conditions of the Agreement regarding the duties of Settlement. All reasonable fees and costs of the Settlement Administrator shall be paid from the Settlement Fund.

**F.**    Per the terms of the Agreement, within one-hundred-and-eighty (180) calendar days after entry of this order or the date of receipt of all necessary information from the Settlement Administrator, the Settlement Fund will be funded by Defendant.

**G.**    No later than seven (7) calendar days after the posting of this Order, the Parties shall provide the Class Data and all other necessary information to the Settlement Administrator for the Settlement Administrator to mail the Notice to all Class Members. The Settlement Administrator shall send the agreed upon Notice and Proof of Claim Form to all Class Members for whom Defendants have been able to ascertain a mailing address.

**H.**    The Class Notice, filed with the court as Exhibit C (Doc. No. 156 at 64-78), is approved[8].  The Court approves, as to form and content, the Settlement Class Notice for the purpose of notifying the Settlement Class as to the proposed Settlement, the Final Approval Hearing, and the rights of Settlement Class Members.  The court finds that the Settlement Class Notice is reasonable, constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and that it meets the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure.  Specifically, the court finds that the Settlement Class Notice complies with Rule 23(e) of the Federal Rules of Civil Procedure as it is a reasonable manner of providing notice to those Settlement Class Members who

---

[8] The court's approval is conditioned on the Parties' carefully reviewing the Notice for typographical errors and the removal of this court's blank signature block from the final page.

would be bound by the Agreement.  The court also finds that the manner of dissemination of notice complies with Rule 23(c)(2), as it also the most practicable notice under the circumstances, provides individual notice to all Settlement Class Members who can be identified through a reasonable effort, and is reasonably calculated, under all the circumstances, to apprise Settlement Class Members of the pendency of this Action, the terms of the Agreement, and their right to object to the Settlement.

**I.**    The Proof of Claim and Release Form, filed with the court as Exhibit A (Doc. No. 156 at 48-54) is approved with the caveat that the attestation requirement be removed before it is sent to Class Members.

**J.**    Class Members have up to and including **September 14, 2024** to file a Claim Form.  Class Members to whom the Notice is resent after having been returned undeliverable shall have an additional fourteen (14) calendar days or until **September 29, 2024**, to file a claim.  Any Class Member incarcerated within CDCR custody shall also have up to an including **September 29, 2024**, to file a Proof of Claim and Release Form.

**K.**    As soon as possible after the entry of this Order, but not later than fourteen (14) calendar days after the entry of this Order, the Settlement Administrator will complete Notice to the Settlement Class as provided in the Agreement.

**L.**    The court will hold a Final Approval Hearing on **October 7, 2024** at **10:00 a.m.** before the Honorable Jeffrey T. Miller, United States District Court for the Southern District of California, **Courtroom 15B** (15th Floor – Carter/Keep) 333 West Broadway, San Diego, CA 92101, for the following purposes:

    1. Finally determining whether the proposed Settlement is fundamentally fair, reasonable, and adequate, and in the best interests of the Settlement Class Members and should be approved by the court;

    2. Considering the application of Class Counsel for an award of attorneys' fees and costs, as provided in the Agreement;

    3. Considering the application of the named Plaintiff for a class representative incentive award as provided in the Agreement;

4. Considering whether the order granting final approval of the class action settlement and judgment, as provided under the Agreement, should be entered, dismissing the Action with prejudice and releasing the Released Claims against the Released Parties; and

5. Ruling upon other matters as the court may deem just and appropriate.

**M.** The court may adjourn the Final Approval Hearing and later reconvene such hearing without further notice to the Class Members.

**N.** Attendance at the Final Approval Hearing is not necessary. Settlement Class Members need not appear at the hearing or take any action to indicate their approval of the proposed class action settlement.

**O.** Class Counsel shall file a Motion for Final Approval of the Settlement with a Proposed Order no later than **September 23, 2024**. Any request by Class Counsel for an award of attorneys' fees and expenses shall be filed by **August 19, 2024**, and that request shall be accompanied by supporting evidence to allow Class Members an opportunity to object to the fee motion itself.

**P.** Each Settlement Class Member will have until **September 14, 2024** to object to the Settlement by serving on the Settlement Administrator, by the **September 14, 2024** deadline, a written objection to the Settlement.

**Q.** Each Settlement Class Member who wishes to object to the Settlement must do so in writing. The objection must: (1) state the Class Member's full legal name, home address, phone number; (2) must reference the case name, *Rhonda Fitzgerald v. Marcus Pollard, et al.,* and case number 20-cv-848-JM-MSB (S.D. Cal); (3) be sent to the Settlement Administrator; (4) include a statement of the position(s) the objector wishes to assert, including the factual and legal grounds for the position; (5) provide copies of any other documents that the objector wishes to submit in support of his/her position; (6) state whether the objector intends to appear at the Final Approval Hearing; (7) identify any counsel representing the objector; (8) be signed by the Class Member or their lawful

representative; and (9) be postmarked to the Settlement Administrator no later than **September 14, 2024**.

**R.**     If, for any reason, the Agreement is not finally approved, then this Order shall be vacated, the Agreement shall have no force and affect, and the Parties' rights and defenses shall be restored, without prejudice, to their respective position as if the Agreement had never been executed and this Order never been entered.

**S.**     The Parties may further modify the Agreement prior to the Final Approval Hearing so long as such modifications do not materially change the terms of the Settlement provided thereunder. The court may approve the Agreement with such modifications as may be agreed by the Parties, if appropriate, without further notice to the Settlement Class.

**T.**     No later than seven (7) days prior to the Final Approval hearing date, the Settlement Administrator shall file an affidavit and serve a copy on Class Counsel and Defense Counsel, attesting that Notice was disseminated as required by the terms of the Agreement or as ordered by the court. This affidavit shall also inform the court of any objections from the Class or other reactions from Class Members received by the Settlement Administrator. The affidavit should provide a full report of the duties performed in support of the settlement administration costs.

**U.**     The court retains continuing and exclusive jurisdiction over the action to consider all matters arising out of or connected with the Settlement, including the administration and enforcement of the Agreement.

**IT IS SO ORDERED**.

 Dated:  July 1, 2024

_____
Hon. Jeffrey T. Miller
United States District Judge