1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RHONDA FITZGERALD, an individual and on behalf of all persons similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>MARCUS POLLARD, et al.,<br><br>                                    Defendants. | Case No.:  20cv848 JM(MSB)<br><br>**FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND REPRESENTATIVE SERVICE AWARD** |

Presently before the court is the Parties' Joint Motion for Final Approval of Class Action Settlement and Plaintiff's Motion for Attorneys' Fees and Litigation Costs.  (Doc. Nos. 168, 160.)  A hearing on the motions was held on October 7, 2024.  For the reasons set forth on the record and as explained in more detail below, the motions are **granted**.

## I.      BACKGROUND

### A.  Factual and Procedural Background

This federal civil rights action (42 U.S.C. §1983) with pendant state claims arises out of an unclothed body search (intermittently referred to herein as a "strip search") of Plaintiff Rhonda Fitzgerald that occurred on September 28, 2019, when she visited the Richard J. Donovan Correctional Facility ("RJD") to see her friend, inmate Christopher Roberts.  (Doc. No. 1, ¶¶ 2, 13.)

On May 5, 2020, Ms. Fitzgerald filed this suit in district court, pursuant to 42 U.S.C. section 1983, alleging that Defendants Marcus Pollard, Lieutenant C. Moore, Sergeant H. Cruz, Officer Jackson and Officer Mann-Little (collectively "Defendants") violated her civil rights and committed torts against her. (Doc. No. 1.)

In the Complaint, Plaintiff asserted: (1) a claim for violation of her Fourth Amendment right - search without reasonable suspicion against all Defendants; (2) a claim for violation of her Fourth Amendment right - search without reasonable suspicion against Defendant Pollard and Doe 1; and (3) a claim for violation of the Fourth Amendment - failure to train and supervise, against Defendant Pollard and Doe 1. (Doc. No. 1 at 8-16[1].) Plaintiff also brought state law claims for intentional infliction of emotional distress and negligence, against all Defendants. (*Id.* at 16-19.)

In the Complaint Plaintiff sought to represent a class consisting of:

> *those visitors to the Richard J. Donovan Correctional Facility in the Class Period[2] who were required to submit to an unclothed search as a condition to visiting an inmate and whose Notice of Request for Search Form states no specific objective facts and rational inferences establishing individualized reasonable suspicion to believe that the person targeted for the search had an intention of smuggling contraband into the Prison.*

*Id.* ¶ 38.

Plaintiff sought injunctive relief barring Defendants from performing further random unclothed searches of visitors at the prison, money damages, and attorney fees and costs. (*Id.* at 20-21.)

On June 1, 2021, Defendants filed an early Motion for Summary Judgment (Doc. No. 41) that was denied by the court (Doc. No. 55).

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

[2] The Complaint defines the class period as running "from two years prior to the filing date of this action to the present date." Doc. No. 1, ¶ 37.

On July 21, 2022, Plaintiff filed a Motion for Class Certification. (Doc. No. 66.) On October 17, 2022 the court held oral argument on Plaintiff's class certification motion. Subsequently, this court issued an Order on November 3, 2022, certifying the following class:

> *Those visitors, from May 5, 2018 to the present, to the Richard J. Donovan Correctional Facility who were required to submit to an unclothed search as a condition to visiting an inmate and were so searched in the absence of individualized reasonable suspicion to believe that the visitor intended to smuggle contraband into the Prison, as evidenced by a failure to provide the basis for the search on a Form 888 – Notice of Request For Search.*

Doc. No. 82 at 5[3].  The Parties agree that over 300 individuals received the Notice of Class Action ("Publication Notice").  (Doc. No. 116-3 at 388-397; *see also* Doc. No. 131-1 at 3-105.)

On January 15, 2024, Plaintiff filed a Motion for Partial Summary Judgment, (Doc. No. 116) that was granted-in-part and denied-in-part by the court (Doc. No. 137).

On February 14, 2024, Defendants filed a Motion to Decertify the Class (Doc. No. 132) that the court denied (Doc. No. 142).

The Parties exchanged numerous settlement proposals in an attempt to resolve this matter, without success.   On April 19, 2024, the Parties participated in a Settlement Conference before Magistrate Judge Michael Berg.  (Doc. No. 149.)  This conference and subsequent arms-length negotiations resulted in the proposed settlement currently before the court.

---

[3] On November 17, 2022, Defendants filed a Motion for Reconsideration of Order on Motion for Class Certification (Doc. No. 85) that was subsequently denied by the court (Doc. No. 91).  Defendants' petition for permission to appeal this court's November 3, 2022 order granting class certification was denied by the Ninth Circuit Court of Appeals on March 29, 2023 (Doc. No. 97).

On June 17, 2024, the court held a hearing on the Parties' Joint Motion for Preliminary Approval of Class Action Settlement (Doc. No. 156).  The court subsequently granted the motion and preliminarily approved the settlement on July 1, 2024.  (Doc. No. 159.)

### B. Settlement Agreement Terms

The settlement agreement ("Agreement"/"Settlement") (*see* Doc. No. 168-2 at 2-22) defines the class as:

> *The three hundred and thirty-three visitors to Richard J. Donovan Correctional Facility, from May 5, 2018 to November 3, 2022, [], who underwent a search of their person as a condition to visiting an incarcerated person at RJD during that time period.  Defendants' agents and representatives, the judge presiding over the Action, and members of their immediate respective families are excluded from the Class.*

Doc. No. 168-2 at 2, ¶ I.G.  Additionally, the Parties estimate that approximately 622 searches are at issue in this case.  *Id.* at 10, ¶ IV.G.

Under the Agreement, class members' damages will be determined based upon a point system, defined as follows:

> 1. *A Group 1 Class Member will be allocated* **5 POINTS** *for each search where the Class Member was escorted to a room by the visiting officers and asked to remove all of his/her clothing and became completely naked so that their body could be inspected by the visiting officers before being allowed to visit an inmate.*
> 2. *A Group 2 Class Member will be allocated* **3 POINTS** *for each search where the Class Member was escorted to a room by the visiting officers and asked to completely remove either his/her pants, including a[sic] underwear, or his/her blouse or top, including a bra, exposing their breast or the lower part of his/her body, so that your [sic] body could be inspected by the visiting officers before being allowed to visit an inmate.*
> 3. *A Group 3 Class Member will be allocated* **1 POINTS** *[sic] for each search where the Class Member was escorted to a room by the visiting officers and asked to move an article of clothing so that the visiting officer*

4

> *could inspect that area of their body, for example[4], where the Class Member was asked to pull down their pants or move their top so that a surgery scar or something else at that body location, could be viewed before being allowed to visit an inmate.*

*Id.* at 9-10, ¶ IV.G

The Agreement requires Defendants pay a gross settlement amount of $3,500,000, allocated as follows: $25,000 as an incentive award for Plaintiff; no greater than 40%, $1,400,000, of the Settlement Fund anticipated to be attorneys' fees; and reimbursement of litigation costs not to exceed $55,000. *Id.* ¶¶ I.T, IV.A, D-F. Under the terms of the Settlement, Simpluris will be used as the Settlement Administrator and will be paid $30,000 from the Settlement Fund. *Id.* ¶¶ I.GG, VI.A.

Settlement class members have one-hundred-and-eighty (180) days after their checks are issued to cash them. *Id.* at 11, ¶ V.H. Any remaining amounts left in the Settlement Fund, including those resulting from uncashed or returned checks, shall be redistributed on a pro rata basis to all class members who properly and timely made claims for money damages. *Id.* ¶ V.I.

In exchange for their share of the Settlement Fund, all class members are deemed to release Defendants, or Released Parties[5], from claims relating to the subject matter of this action, arising under federal, state and/or local law, statute, ordinance, regulation, common

---

[4] To avoid a fragmented sentence, the court altered the punctuation in this paragraph from how it appears in the Agreement.

[5] Per the Agreement: "'Released Parties' or 'Released Persons' means California Department of Corrections and Rehabilitation ("CDCR"), Defendants and its respective predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, related or affiliated entities and agencies, whether named or unnamed and whether served or unserved, and any and all of their past and present employees, executives, officers, directors, agents, representatives, and attorneys. The term 'Released Parties' or 'Related Persons' expressly includes, but is not limited to, the State of California and its departments, divisions and agencies and the named Defendants, C. Moore, M. Pollard, A. Jackson, C. Mann-Little, and H. Cruz." Doc. No. 168-2 at 5, ¶ I.CC.

law, or other source of law, arising out of, or related to any allegations in the Complaint. *Id.* at 16, ¶ VIII.A.

## II.    FINAL APPROVAL OF SETTLEMENT

### A. Approval of Settlement and Federal Rule of Civil Procedure 23(e)

Having previously certified the class (*see generally,* Doc. No. 82), the court need only determine whether the proposed settlement is "fair, reasonable, and adequate" pursuant to Rule 23(e)(2).

As explained in the Preliminary Approval Order (Doc. No. 159), when reviewing a proposed settlement, the court's primary concern "is the protection of those class members, including the named plaintiff, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.,* 688 F.2d 615, 624 (9th Cir 1982). Ultimately, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 526 (C.D. Cal. 2004).

In making the determination of whether the proposed settlement is fundamentally "fair, adequate and reasonable," the court is required to "evaluate the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.* 696 F.3d 811, 818-19 (9th Cir. 2012). Because a "settlement is the offspring of compromise, the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011).

Traditionally, district courts within the Ninth Circuit balance several factors when assessing a settlement proposal, namely:

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of

counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026.

As amended, Rule 23(e) provides that a court may approve a proposed class action settlement after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

## 1. Rule 23(e)(2) Factors

In its Preliminary Approval Order, this court found that the applicable Rule 23(e)(2) factors weighed in favor of approving the Settlement. (*See* Doc. No. 159 at 8-19.) No pertinent facts have changed since the court reached its earlier conclusion. Thus, the court reaffirms and incorporates by reference its analysis of the Rule 23(e)(2) requirements as set forth in its Preliminary Approval Order. (*See id*.) Accordingly, the court finds the Settlement meets the requirements of Rule 23(e)(2).

## 2. Adequacy of Notice

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. For the court to approve a settlement, "[t]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice,* 688 F.2d at 624 (citation omitted).

A court approved Publication Notice was originally mailed to putative class members informing them that they could opt out of the class by submitting an Exclusion

Request Form (attached to the Publication Notice). The Publication Notice also advised: "[i]f you do nothing, you will stay in this lawsuit and be bound by the outcome. You will also give up your right to sue on your own behalf." The Publication Notice explicitly notified class members that they had the opportunity to remain part of the litigation or seek exclusion, meaning no "second change" opt-out opportunity was required.

The court also approved the Notice of Settlement and accompanying claim form in the July 1, 2024, Preliminary Approval Order. The Agreement called for sending the Notice of Settlement directly to class members via First Class U.S. Mail, postage prepaid. In support of her Motions, Plaintiff has filed the Declaration of Shelby Alvey, a project manager at Simpluris, the Settlement Administrator retained in this matter. *See generally,* Doc. No. 169. The declaration details the actions taken by the Administrator including the implementation of a Settlement website and toll-free hotline dedicated to informing class members of their rights and options under the Settlement. (*Id.*) The Settlement Administrator declares that the Settlement Notices were mailed directly to 313 class members, eighteen (18) class members did not have valid mailing addresses. (*Id.* ¶¶ 8, 9.) Sixteen (16) notices were determined to be undeliverable, two (2) class members are deceased, resulting in 297 class members having been contacted to participate in the settlement. (*Id.* ¶¶ 10-13.) The Administrator reports that, to date, the Settlement website, has been visited by 165 unique users, with 828 page views, since it was established on July 15, 2024. (*Id.* at ¶ 15.) Additionally, the toll-free number, which opened on July 15, 2024, has received sixty-five (65) calls. (*Id.* ¶ 16.)

The Notices advised the class of the terms of the Settlement, of their rights: (1) to participate and how to receive payment of their share of the Settlement; (2) to object to the Settlement and to appear at the Final Approval Hearing; (3) to request exclusion from the Settlement; (4) the manner and timing for doing any of these acts; and (5) the date and time set for the Final Approval Hearing. Included on the Notices was adequate information regarding the class period. The Notices also displayed the Settlement's website:

www.rjdstripsearch-claim.com and the toll-free number 1-888-804-1915.  (Doc. No. 169 ¶ 3.)

As of the date of this order, no class member has objected to the Settlement.

Accordingly, the court determines that the Notices in the case were the best "practicable under the circumstances," giving the settlement class members adequate notice of the Settlement.

### 3.  Additional Ninth Circuit Factors

According to the advisory committee's note to the 2018 amendment to Federal Rule Civil Procedure 23(e)(2), the goal of the revised factors was "not to displace any factor [developed by a circuit], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Fed. R. Civ. P. 23(e)(2).  The court will, therefore, now turn to the various Ninth Circuit factors as enumerated in *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998).

### i.   *Strength of Plaintiff's Case; Risk of Further Litigation; and Risk of Maintaining Class Action Status*

The preferable nature of settlement over the uncertainties, expense, and length of litigation, means "when assessing the strength of plaintiff's case, the court does not reach any ultimate conclusions regarding the contested issues of fact and the law that underlie the merits of this litigation."  *Four in One Co. v. S.K. Foods, L.P.,* No. 2:08-CV-3017 KJM EFB, 2014 WL 4078238, at *7 (E.D. Cal. Aug. 14, 2014) (internal quotations omitted). Similarly, "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class."  *Nat'l Rural Telecomms. Coop,* 221 F.R.D. at 526.

Here, the Settlement was reached approximately four years after this case was filed, following the dedication of significant time and resources during litigation.  The issues of class certification and summary judgment have been briefed multiple times and ruled on by the court, with the case settling only two months before trial was set to begin.  *See Low*

1  *v. Trump Univ., LLC,* 246 F. Supp. 3d 1295, 1302 (S.D. Cal. Mar. 31, 2017) ("Where a
2  case is near trial, and the parties have conducted extensive discovery and thoroughly
3  litigated the issues, the extent of discovery and the stage of proceedings weigh in favor of
4  settlement.") (internal quotations and citation omitted).    Indeed, Class Counsel has
5  expended approximately $38,000 in litigation expenses.   And, throughout this litigation,
6  Defendants have vigorously defended against Plaintiff's claims, with no guarantee that
7  Plaintiff will prevail.   In sum, the risks of continuing this litigation are known to all
8  involved.  The court finds these risks weigh in favor of settlement.

9  ### ii.    The Amount Offered in Settlement

10  "Basic to [the process of deciding whether a proposed settlement is fair, reasonable
11  and adequate] * * * is the need to compare the terms of the compromise with the likely
12  rewards of litigation."  *In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 422
13  (N.D. Cal. 2009) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry*
14  *Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)).  "The fact that a proposed settlement may
15  only amount to a fraction of the potential recovery does not, in and of itself, mean that the
16  proposed settlement is grossly inadequate and should be disapproved."  *Linney v. Cellular*
17  *Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted).

18  Here, the amount offered in settlement is more than adequate and supports final
19  approval.  The Settlement authorizes a recovery of $3,500,000.00, less court-awarded fees
20  and expenses and the costs of administering the settlement.   After all the proposed
21  payments are deducted from the Settlement Fund, the remaining amount is approximately
22  $2,000,000.

23  Each class member will receive a payout based on the number of alleged
24  unconstitutional searches they were subjected to and the level of intrusiveness of each
25  search.  Each of the three search types, Groups 1-3, have been allocated points: 5 points
26  for a Group 1 search, 3 points for a Group 2 search and 1 point for a Group 3 search.
27  Originally, it was determined that 500 Group 1 type searches occurred, 31 searches fell
28  into the Group 2 category and 91 Group 3 type searches were identified.  Class members

in Group 1 were originally projected to receive $3,500 per search.  Class members subjected to a Group 2 search were expected to receive $2,150 per search.  And it was estimated that class members in Group 3 would receive approximately $750 per search.  In other words, each point earned equated to at least $700.  However, at the Final Approval Hearing, Class Counsel clarified that the approximately 40% Claim Form Submission rate, lower attorney costs, and under budget Settlement Administrator fees has resulted in a larger net Settlement Fund than previously anticipated.  This larger net Settlement amount requires recalculating the monetary award each search point earns and will, in turn, increase the pay-out amount per search.  Class Counsel reports that settlement class members will receive "an average payment of $3,600, with the highest payment being $109,440.00." Doc. No. 168-1 at ¶12.  Without question, this provides meaningful and direct recovery to class members.

In light of the risks associated with continuing this litigation, the court finds the proposed payouts to be fair, reasonable and adequate and the total to be in favor of approval of the settlement.  The relief is also adequate under Rule 23(e)(2) considering the effectiveness of the method of distributing the funds directly to the class members in the form of paper checks, the non-revisionary nature of the settlement, the terms of the proposed award of attorneys' fees, and the fact that any delay of trial and appeal may result in zero recovery.

### iii.    Extent of Discovery and Stage of Proceedings

A court should focus on whether the "parties have sufficient information to make an informed decision about settlement." *In re Mego*, 213 F.3d at 459 (quoting *Linney*, 151 F.3d at 1239).  *See also Onitverso v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates the parties carefully investigated the claims before reaching a resolution.").

Here, the Parties have litigated this case for approximately four years, with Plaintiff filing an original complaint, First Amended Complaint, motion for class certification, motion for summary judgment and defending motions to dismiss, reconsider, decertify and

summary judgment. The Settlement was reached two months before trial was set to begin. Both Parties have been engaged in formal and informal discovery and document exchange. Class Counsel was involved in approximately twenty-three (23) depositions. The Parties exchanged numerous fruitless settlement proposals before reaching an agreement following the Settlement Conference held by Magistrate Judge Berg. Thus, the court is comfortable concluding that the Parties have "sufficient information to make an informed decision about settlement." *Linney,* 151 F.3d at 1239. Accordingly, this factor weighs in favor of approval of the settlement.

### iv.    Experience of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citing *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979)). Here, Class Counsel has provided a declaration detailing their experience in prosecuting complex cases, civil rights and class actions similar to this one. Class Counsel, through Ms. Skapik's declaration, attest that "[t]he Settlement Amount provides a substantial benefit to all Class Members and should be approved as fair, reasonable, and adequate." Doc. No. 163 at ¶ 13; *see also id*. ¶ 5. In light of the foregoing, and affording proper weight to the judgment of counsel, the court finds this factor weighs in favor of the settlement.

### v.    Government Actor

The presence of a governmental participant in the class action settlement generally weighs in favor of approving the settlement. *See J.L. v. Cuccinelli,* No. 18-cv-04914-NC, 2019 WL 6911973, at *3 (N.D. Cal. Dec. 18, 2019).

Here, Defendants are various agents of the State of California and its corrections department who support the Settlement. This factor, therefore, weighs in favor of settlement.

### vi.    Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement

are favorable to the class members." *Nat'l Rural Telecomm. Coop., Inc.,* 221 F.R.D. at 529 (citations omitted).

Here, no objections to the settlement have been received. (Doc. No. 168 at 11; Doc. No. 168-1 ¶ 29.) As to the number of class members that have opted out of the settlement, at the Final Approval Hearing Class Counsel informed the court that no putative class members have opted out of the settlement. However, by way of declaration submitted by Class Counsel in support of the Motion for Preliminary Approval on June 3, 2024, it was attested that "four putative class members had submitted Exclusion Request Forms." Doc. No. 156-2, ¶ 44. Notwithstanding the confusion regarding whether four requests for exclusion have been received, such a small number of opt outs and the absence of any objections weigh in favor of settlement. *See Nat'l Rural Telecomm. Coop., Inc.,* 221 F.R.D. at 529 (the absence of a single objection "is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate.").

### *vii.    Other Factors*

In looking at the fairness of the settlement, the court considers two additional factors: the process by which the settlement was reached and the involvement of the named plaintiff in the process. *See Young v. Polo Retail, LLC,* No. C-02-4546 VRW, 2007 WL 951821, *3 (N.D. Cal. Mar. 28, 2007) (adding factors "(9) the procedure by which the settlements were arrived at, see MANUAL FOR COMPLEX LITITGATION (FOURTH) § 21.6 (2004), and (10) the role taken by the plaintiff in that process."). Here, the Parties reached agreement after attending a Mandatory Settlement Conference with Magistrate Judge Berg. The court can put "a good deal of stock in the product of an arms-length, non-collusive negotiated resolution." *Rodriguez v. West Publ'g Grp.,* 563 F.3d 948, 965 (9th Cir. 2009). *See also Todd v. STARR Surgical Co.,* No. CV 14-5263 MWF (GJSx), 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal citation omitted).

Class Counsel also declares that Plaintiff sat for a deposition, attended multiple settlement conferences, responded to discovery, submitted multiple declarations in support

of, or in opposition to, various motions, and attended court hearings. (Doc. No. 168-1, ¶ 35.) Further, there is no evidence of preferential treatment for certain class members because final approval is not contingent upon the court's determination of the class representative incentive award. Accordingly, the court finds these factors weigh in favor of settlement.

### viii.    Balancing of the Factors

"Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (citation omitted). "[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation." *Id.* Having considered the relevant factors, the court finds they all weigh heavily in favor of settlement of the Rule 23 Class claims. Consequently, the court finds the settlement fundamentally fair, adequate, and reasonable.

## III.    MOTION FOR ATTORNEYS' FEES, COSTS AND CLASS REPRESENTATIVE PAYMENTS

### A.  Attorneys' Fees

In, *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d. 988, 993-94, (9th Cir. 2010), the Ninth Circuit held that the "plain text of [Fed. R. Civ. P. 23(h)] requires that any class member be allowed an opportunity to object to the fee 'motion' itself, not merely to the preliminary notice that such a motion will be filed." Here, Plaintiff timely filed her fee motion on August 19, 2024, seeking $1,400,000 or 40% of the Settlement Fund be awarded to Class Counsel. No class member has filed an objection to the request in the time allotted to file objections.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to the amount." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). That

Defendant has agreed in the Settlement not to oppose Counsel's request for $1,400,000 "does not detract from the need carefully to scrutinize the fee award." *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003).

Additionally, a prevailing party may be awarded reasonable fees in relation to the prosecution of a federal civil rights claim. *Thomas v. City of Tacoma*, 410 F.3d 644, 647 (9th Cir. 2005). For a plaintiff that prevails on a § 1983 claim, fees may be awarded fees pursuant to 42 U.S.C. § 1988. 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of section[ ] ... 1983 ... of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee...."). "[A] prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Hensley v. Eckerhart,* 461 U.S. 424, 429, (1983) (quoting S. Rep. No. 94–1011, p. 4 (1976)). Generally, once a party is found eligible for fees under § 1988, a district court may apply the loadstar method to determine if the request is reasonable. *Id.* 461 U.S. at 433. *See also Gonzalez v. City of Maywood,* 729 F.3d 1196, 1202 (9th Cir. 2013) (quoting *Ballen v. City of Redmond,* 466 F.3d 736, 746 (9th Cir. 2006)). The district court "may then adjust [the lodestar] upward or downward based on" twelve factors identified in *Hensley.  Id.*  (quoting *Moreno v. City of Sacramento,* 534 F.3d 1106, 1111 (9th Cir. 2008)); *see Hensley,* 461 U.S. at 430 n. 3.

In a common fund case such as this one, the court has discretion to choose either the lodestar method or the percentage-of-the-fund method when calculating reasonable attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). When employing their discretion and utilizing the percentage-of-recovery method, federal "courts typically calculate 25% of the [common settlement] fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth Headset Products Liab.*, 654 F.3d at 942 (citation omitted). The lodestar method, "requires multiplying a reasonable hourly rate by the number of hours reasonably expended on the case." *Shirrod v. Dir., Office of Workers' Comp. Programs,* 809 F.3d 1082, 1086 (9th Cir. 2015).

### 1. Percentage of the Fund

In assessing the reasonableness of the award in common fund percentage award cases, the Ninth Circuit has provided a non-exhaustive list of factors to be used, including:

> the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015).

Here, Class Counsel submits that awarding $1,400,000 or 40% of the Settlement Fund is reasonable because "the results achieved in this extremely high-risk litigation are excellent. . . .[] [and] [a]s a result of this litigation, the 888 search forms utilized for a search, as well as the methodology employed regarding visitor strip search[es] ha[ve] now been forever changed in order to ensure that searches of visitors will comply with the law and not violate the visitor's constitutional rights." Doc. No. 160 at 16.

First, the class action achieved exceptional results. As the court has acknowledged above, the settlement amount of $3,500,000 confers substantial benefits upon the settlement class, with the estimated payout per partially unclothed search originally thought to be approximately $750 and $3500 per fully unclothed search – amounts that cannot be considered nominal or trivial. The smaller number of claim forms submitted, roughly 120 out of the possible 297 class members notified, will result in a higher payout per search[6]. For example, certain class members who were unconstitutionally strip searched over

---

[6] The approximately 40% claim form submission rate has resulted in the Parties' decision to recalculate the actual payout amount per search class members will receive before mailing any checks. By doing so, the Parties hope to avoid the necessity of a secondary distribution.

twenty times are projected to receive settlement compensation in the range of $70,000. (*See* Doc. No. 163, ¶ 15.)

Second, the Settlement generated benefits beyond the cash settlement itself. Not only does the settlement here provide substantial monetary relief to members of the class, it also directly addresses the claims at issue in this case by providing substantive non-monetary relief to the public. Visiting Officers at RJD will no longer use pre-printed and pre-signed Form 888 search forms. Any unclothed search of a prison visitor will now have to be approved by the visiting sergeant or visiting lieutenant prior to the search being performed and the reason for the search must be documented at the time of the search. Even though this priceless injunctive relief is difficult to ascertain and is not included as part of the value of the common fund, "courts should consider the value of the injunctive relief obtained as a 'relevant circumstance' in determining what percentage of the common fund class counsel should receive as attorneys' fees, rather than as part of the fund itself." *Staton,* 327 F.3d at 974 (specifically holding that "only in the unusual instance where the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained may courts include such relief as part of the value of a common fund for purposes of applying the percentage method of determining fees."). All told, the results achieved weigh in favor of granting Class Counsel's requested fee award.

Third, Class Counsel undertook a somewhat uncertain representation. The continued risk of litigation, the challenge of overcoming the hurdle of qualified immunity as part of Defendants' defenses, the possibility of not recovering any monetary award particularly in light of evolving law and facing the vigorous defense of the case put forth by opposing counsel from the State of California's Attorney General's, are all factors that support Class Counsel's request. *See McGrath v. Wyndham Resort Dev. Corp.,* No. 15cv1631 JM (KSC), 2018 WL 637858, at *8 (S.D. Cal. Jan. 30, 2018) (finding request of one-third of $7.25 million common fund reasonable where continued litigation posed "significant risk of no recovery"); *In re Heritage Bond Litig.,* No. 02-ML-1475 DT, 2005

WL 1594403, at *20 (C.D. Cal. June 10, 2005) ("the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award.").

Fourth, the experience of Class Counsel in litigating complex cases, civil rights and class actions of this type provide further support for the request. Class Counsel: (1) were successful in defending against a motion to dismiss, motion for summary judgment, motion for reconsideration of class certification, and motion for decertification; (2) were involved in vexing and challenging discovery – often contentious; (3) compiled and analyzed numerous strip search authorization forms produced by Defendants; and (4) participated in settlement negotiations that were ultimately successful. All of this was done against experienced defense counsel from California's Attorney General's Office. *See In re Heritage Bond Litig.,* 2005 WL 1594403, at *20 (noting "the quality of opposing counsel is important in evaluating the quality of Plaintiff's counsel's work.").

Fifth, Class Counsel took this case on a contingency fee basis and assumed the risk of non-payment which weighs in favor of the award. Indeed, Class Counsel declares that firm expended $36,205.09 in out-of-pocket costs and worked 1,845.40 hours pursuing this litigation, maintaining that "[i]n order to devote the necessary time and resources [to vigorously prosecute this action], [the Skapik Law Group] had to forego other compensable work." Doc. No. 163 at ¶ 17. *See In re Quantum Health Res., Inc. Sec. Litig.,* 962 F. Supp. 1254, 1257 (C.D. Cal. 1997) ("Because payment is contingent upon receiving a favorable result for the class, an attorney should be compensated both for services rendered and for the risk of loss or nonpayment assumed by accepting and prosecuting the case.").

Finally, the reaction of the class to the Settlement supports the fee application as no class member has objected and as few as four out of the 333 class members may have requested exclusion. *See In re Heritage Bond,* 2005 WL 1594403, at *21 ("The existence or absence of objectors to the attorneys' fee award is a factor in determining the appropriate fee award") (citation omitted).

In sum, all of the factors support Class Counsel's request for an award of 40% of the Settlement Fund.

1

### 2. Lodestar Method

2

While the court need not engage in a full-blown lodestar analysis when the primary

3

basis remains the percentage method, the calculation is meant to provide a "useful

4

perspective on the reasonableness of a given percentage award." *Vizcaino,* 290 F.3d at

5

1050.

6

"In determining a reasonable hourly rate, the district court should be guided by the

7

rate prevailing in the community for similar work performed by attorneys of comparable

8

skill, experience, and reputation." *Chalmers City of L.A,* 796 F.2d 1205, 1210-11 (9th Cir.

9

1986), *amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987).  The number of hours

10

billed must equal the number of hours that can reasonably be billed to a private client.

11

*Gonzalez,* 729 F.3d at 1202.

12

Class Counsel have submitted a lodestar calculation with their request.  (Doc. No.

13

160 at 22-24.)  Class Counsel declare a total of 1,845.40 hours have been worked on this

14

case.[7]  The calculated lodestar for these hours is $1,325,092.00.  Class Counsel's loadstar

15

calculation results in a multiplier of 1.06.  Counsel calculates the lodestar with hourly rates

16

for attorneys ranging from $525 to $825 an hour, with paralegals being billed at $195 an

17

hour.

18

In support, Class Counsel have submitted a declaration from Ms. Skapik attesting to

19

the hours worked and billing rates.  Doc. No. 163 ¶¶ 19, 20.)  Ms. Skapik declares her

20

hourly rate is $825 an hour and the work performed by the individuals at the Skapik Law

21

Group and co-counsel is summarized on a chart, along with each person's hourly rate,

22

hours worked, lodestar, and their varying years of experience.  (*Id.* at ¶ 19.)  The chart

23

identifies 2 partners, 1 senior associate, 1 counsel, 1 attorney, and 1 paralegal as being on

24

---

25

26

[7] This figure does not account for the work Class Counsel will do in connection with work

27

related to final approval, court appearances, and implementation of the settlement.  (Doc.
No. 163 at ¶ 21.)

28

the case team.  At the request of the court, the underlying billing entries for each individual timekeeper, along with a brief description of the task being performed, was also provided. (*See* Doc. No. 166.)

### i.    *Reasonableness of Rates*

"[C]ourts are required to evaluate the reasonableness of counsel's fees, regardless of a challenge by opposing counsel." *Kries v. City of San Diego*, No. 17-cv-1464-GPC-BGS, 2021 WL 120830, at *6 (S.D. Cal. Jan. 13, 2021) (citation omitted).  As an initial matter, the court notes that Class Counsel provided no case citations reflecting what reasonable rates are for federal civil rights class actions in the Southern District of California.  So, with little evidence, aside from Class Counsel's declaration to support the fee request before the court, the court may "rely on its own familiarity with the legal market" to determine the reasonable rates of members of the Berger Montague firm.  *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Here, Class Counsel is seeking approval of hourly rates ranging from $525 - $825 for attorneys working on this matter.  It seeks $825 for partner, Geralyn Skapik, who has 35 years of experience as a lawyer.  (Doc. No. 163 ¶ 19.)  $825/hour is requested for partner, Mark Skapik, who was 31 years of experience. (*Id.*)  Relatedly, $775/hour is being requested for senior associate, Blair J. Berkely, who has 22 years of experience.  Similarly, Co-counsel Eric Morris, with 19 years of experience, has a proposed market rate of $775/hour.  (*Id.*)  Class Counsel states the hourly rate for 4-year attorney Matthew Falkenstein is $525/hour.

In this case, the court takes no issue with the rates being requested by the Skapik Law Group.  The hourly rates are within the range normally charged within this legal community.  *See e.g., Soler v. Cnty. of San Diego*, No. 14cv2470-MMA (RBB), 2021 WL 2515236, at *5 (S.D. Cal. June 18, 2021) (42 U.S.C. § 1983 civil rights litigation where court determined that $650 per hour was a reasonable rate for an extremely experienced civil rights trial attorney with 25 years' experience, noting that "courts in this District have awarded hourly rates for work performed in civil cases by attorneys with significant

experience anywhere in the range of $550 per hour to more than $1000 per hour")
(collecting cases).[8]

Regarding the paralegal rates, Class Counsel fails to provide any case law to support
the rates of its paralegals. Despite this omission, the court may consider Ms. Skapik's
declaration, similar cases, and its own knowledge and familiarity with the Southern District
of California's legal market in setting a reasonable hourly rate for paralegal services. *See
Ingram*, 647 F.3d at 928. Generally, reasonable rates for paralegals in this district have
ranged from $125 to $250. *See, e.g.*, *Martinez v. Costco Wholesale Corp.*, No. 19-CV-
1195-WVG, 2023 WL 2229267, at *10, (S.D. Cal. Feb. 23, 2023) (adopting as reasonable
paralegal hourly rate of $250); *Durruthy v. Charter Commc'n, LLC*, No. 20-cv-1374-W-
MSB, 2021 WL 6883423, at *6 (S.D. Cal. Sep. 30, 2021) ("This district has awarded
paralegal fees in line with the $175 to $250 requested[.]"); *San Diego Comic Convention
v. Dan Farr Prods.*, No. 14-cv-1865-AJB-JMA, 2019 WL 1599188, at *15 (S.D. Cal. Apr.
15, 2019) ("Reasonable rates for paralegals in this district have ranged from $125 to $225,"

---

[8] *See also Ziegler v. GW Pharmaceuticals, PLC,* No. 21-cv-1019-BAS-MSB, 2024 WL
1470532, at * (S.D. Cal. Apr. 3, 2024) (finding $975 an appropriate hourly rate for a
managing partner, $850 for a senior associate, $750 for "of counsels," and $475-575 for
associates in Private Securities Litigation Reform Act action); *Nguyen v. BMW of N. Am.,*
No. 3:20-CV- 2432 JLS (BLM), 2023 WL 173921, at *3 (S.D. Cal. Jan. 12, 2023)
(approving attorneys' fees of $525/hour for law firm principal with 16 years of consumer
law experience, $375/hour for senior litigation attorney with 6 years of experience,
$325/hour for associate attorney with 3 years of experience; $140/hour for a post-bar
clerk); *Herring Networks, Inc. v. Maddow,* No. 3:19-cv-1713-BAS-AHG, 2021 WL
409724 at *5, (S.D. Cal. Feb. 5, 2021) (finding $1050-$1150 to be reasonable rates for
partners with more than 30 years of experience from a Top 100 law firm); *Kries,* 2021 WL
120830, at *7-8 (approving following 2019-2020 rates for labor and employment attorneys:
30+ years of experience at $650/hour; 14 years of experience at $500/hour; 6 years of
experience at $400/hour; 4 years of experience at $295/hour; 3 years of experience at
$225/hour); *Lopez v. Mgmt. & Training Corp.,* Case No. 17cv1624 JM(RBM), 2020 WL
1911571, at *8-9 (S.D. Cal. Apr. 20, 2020) (approving attorneys' fee request with rates
ranging from $500 to $900 per hour in wage and hour class action);

noting $290 as being the highest paralegal rate this district has approved) (collecting cases), *attorneys fees aff'd* by 807 F. App'x 674 (9th Cir. 2020).  Additionally, the most recently published United States Consumer Law Attorney Fee Survey Report in 2017-2018 announces $147 as the average paralegal billing in rate in San Diego at that time.  United States Consumer Law Attorney Fee Survey Report 2017-2018, *available at* https://burdgelaw.com/wp-content/uploads/2021/11/US-Consumer-Law-Attorney-Fee-Survey-Report-w-Table-of-Cases-091119.pdf (last visited June 17, 2024).

Accounting for inflation over the past five years, the court finds that the proffered hourly paralegal rates being requested by Class Counsel are justifiable and supported by the paralegal rate structure of the community.  Accordingly, the court determines the Skapik Law Group paralegal rate of $195/hour reasonable.

### ii.    *Reasonableness of the Hours Expended*

Even though the court need not closely scrutinize each claimed attorney-hour, some review is required.  As the moving party, Class Counsel "bears the burden of documenting the appropriate hours spent in litigation and submitting evidence in support of the hours worked." *Hensley,* 461 U.S. at 433.  Hours should not be counted if they are excessive, redundant, or otherwise unnecessary. *Id.* at 434.

Here, Class Counsel assert 1,845 hours have been worked on this case and a copy of the underlying entries was provided.  (Doc. No. 160 at 23; Doc. No. 166.)  A review of the chart illustrates that it contains some entries that do not furnish detailed descriptions of the work performed e.g., "prepared complaint," (*see, e.g.,* Doc. No 166 at 26), and "team meeting regarding strategy," (*id.,* at 8).  Additionally, some of the work performed by a paralegal could have been assigned to a legal secretary and billed at a much lower rate than the requested $195/hour, (*see, e.g.*, "sending out class notices," Doc. No. 166 at 17, "get envelopes ready to send out to class members," *id.* at 19).  And, "[p]urely clerical tasks are generally not recoverable on motion for attorney's fees as they should be considered a part of the firm's overhead rather than billed to a client." *Kries*, 2021 WL 120830 at *11.

Nevertheless, at bottom, the work entries generally appear reasonable and necessary under the circumstances.

### iii.     Lodestar conclusion

As multipliers of 1 to 4 are commonly awarded, the submitted lodestar of 1.06 is not unreasonable and is well within the range commonly awarded in complex class action cases in the Ninth Circuit.  *See Figueroa v. Cap. One, N.A.,* No. 18cv692 JM(BGS), 2021 WL 211551, at *10 (S.D. Cal. Jan. 21, 2021) (approving lodestar multiplier of 3.35*); Patel v. Axesstel,* No. 3:14-CV-103-CAB-BGS, 2015 WL 6458073, at *8 (S.D. Cal. Oct. 23, 2015) ("Class counsel also points out that the Court could arrive at this total using the lodestar method with a 1.38 multiplier, which is well within the range of 1.0 to 4.0 often used by district courts in common fund case.") (citing *Kakani v. Oracle Corp.,* No. 06- 06493WHAT, 2007 WL 4570190, at *2(N.D. Cal. Dec 21, 2007) ("Although the range of multipliers used by district courts in common-fund cases varies widely, an overwhelming majority of district courts have used between 1.0-4.0 as the multiplier.")). *See also Vizcaino,* 290 F.3d at 1051 (upholding a 28% fee award that constituted a 3.65 lodestar multiplier).  The lodestar, therefore, supports the 40% fee award.

### iv.     Conclusion Regarding Attorneys' Fees Request

Thus, guided by the principle that it is incumbent upon it to award fees for work that was reasonable and necessary under the circumstances, the court finds the full 40% benchmark award requested is appropriate in the context of this case.  At first blush, this award may appear on the high end, but courts have awarded fees in the range of 30-50% of the funds where, as here, the gross settlement amount is less than $10 million.  *See Craft v. Cty. Of San Bernardino,* 624 F. Supp. 1113, 1127 (C.D. Cal. 2008) (citing *Von Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 297-98 (N.D. Cal. 1995)).  Moreover, this upward departure from the 25% benchmark reflects the outstanding result achieved for the class, the novel legal issue litigated, the contingent nature of the litigation, and the significant, meaningful changes Defendants have made to the unclothed search practices at RJD.  Class Counsel's achievement of litigating to the hilt and vindicating the fundamental right to visit

a family member, friend, or other incarcerated individual without fear of being subjected to an unwarranted strip search is to be commended and warrants this award. *See Spann v. J.C. Penny Corp.,* 211 F. Supp. 3d 1244, 1263 (C.D. Cal. 2016) ("As always, when determining attorneys' fees the district court [is] guided by the fundamental principle that fee awards out of common funds be reasonable under the circumstances.") (quoting *Glass v. UBS Fin. Servs., Inc.,* 2007 WL 2211862, at *14 (N.D. Cal. 2007) *aff'd* 331 Fed. Appx. 452 (9th Cir. 2009)). Accordingly, the court awards Class Counsel attorneys' fees in the amount of $1,400,000.

### B. Settlement Administration Costs

Per the terms of the Settlement and Preliminary Approval Order, Simpluris, was approved as the Settlement Administrator and is to be paid from the Settlement Fund. Originally, Simpluris anticipated its costs would be approximately $30,000 based on a much higher claims rate. (Doc. No. 156 at 37).

Class Counsel now request the court to approve reimbursement to Simpluris for the costs associated with notice and claims administration, in the amount of $19,454.00. (Doc. No. 169, ¶ 24.) Shelby Alvey, a Project Manager for Simpluris, submitted a declaration regarding the implementation of the Notice, and other administrative services performed. *See generally*, Doc. No. 169. Although an actual breakdown of the monies spent or hours worked has not been provided by the Administrator, the court's own familiarity and knowledge regarding the costs of administrating class action settlements indicates that the requested is reasonable. Accordingly, the court awards class administrator fees in the amount of $19,454.00.

### C. Costs

Federal Rule of Civil Procedure 23 permits a court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Under the "common fund doctrine," "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In*

*re Apple Inc., Device Performance Litig.,* 50 F.4th 769, 785 (9th Cir. 2022) (quoting *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977)).  The fundamental purpose of the doctrine "is to spread the burden of a party's litigation expenses among those who are benefitted."  *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 271 (9th Cir. 1989).  In sum, Class Counsel are entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case.  *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)); *Staton,* 327 F.3d at 974.

Regarding the approximately $37,500 sought in costs, the bulk of these costs encompass deposition related costs (e.g., court reporters, videographers, and transcripts), filing and service fees, legal research, travel related charges, and expenses related to photocopying costs and postage.  (Doc. No. 160 at 24.)  A report summarizing the categories of costs was also provided.  (*See* Doc. No. 168-2 at 157-59.)  A review of the report indicates that the requested fees are reasonable.  Accordingly, the court awards class administrator fees in the amount of $37,500.00.

### D. Class Representative Payments

Although "incentive awards are fairly typical in class action cases," they are discretionary.  *Rodriguez*, 563 F.3d at 958.  "Generally, when a person joins in bringing an action as a class action he has disclaimed any right to a preferred position in the settlement."  *Staton*, 327 F.3d at 976.  (internal ellipses, quotations, and citation omitted).  The purpose of incentive awards, therefore, is "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez,* 563 F.3d at 958-59.  However, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives."  *Radcliffe v. Experian Info. Solutions Inc.,* 715 F.3d 1157, 1164 (9th Cir. 2013).

In the Settlement papers, the named Plaintiff asks for an incentive award of $25,000. Ms. Skapik, on behalf of Class Counsel, declares that named Plaintiff "performed her duty to the Class admirably and without exception." Doc. No. 168-2 at ¶ 35. Further, Class Counsel represents Plaintiff worked extensively by responding to multiple discovery requests, attending meetings, and participating in multiple settlement conferences. (*See id.*) Ms. Skapik also attests that Plaintiff "experienced hardship" as after filing the lawsuit she was in essence, 'blacklisted' and was unable to see her inmate friend until [Ms. Skapik] intervened and addressed the issue with defense counsel." (*Id.*) Ms. Fitzgerald submitted a declaration in support of the request, (Doc. No. 168-2 at 161-65) estimating that she has spent over 100 hours devoted to this lawsuit (*id.*, ¶ 8).

Given Plaintiff's level of involvement in the case, the undertaking of the risk in bringing this action, and the fact the amount of the request is consistent with those typically awarded as incentive payments, the court determines that Plaintiff's request is reasonable. *See, e.g., In re BofI Holding, Inc. Sec. Litig.,* Nos: 3:15-CV-02324-GPC-KSC, 3:15-CV-02486-GPC-KSC, 2022 WL 9497235, at *8, 11 (S.D. Cal. Oct. 14, 2022) (finding a "$15,000 service award constitutes only .1% of the total $14,100,000 recovery" and was therefore "fair and reasonable."); *McGrath,* 2018 WL 637858, at *11 (awarding $10,000 to class representative); *Beaver v. Tarsadia Hotels,* No. 11-cv-01842-GPC-KSC, 2017 WL 4310707, at *7-8 (S.D. Cal. Sept. 9, 2017) (approving four class representative awards of $50,000) (collecting cases).[9] There are no circumstances indicating that the award would create a conflict between the named Plaintiff and class members. Accordingly, Plaintiff Fitzgerald is awarded $25,000 as a service award.

///

---

[9] *See also Bova v. JPMorgan Chase Bank, N.A.,* No. 07cv3410 AJB (JMA), 2011 WL 13176812, (S.D. Cal. Oct. 14, 2011) ($20,000 class representative award); *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) ($25,000 award).

## IV.    CONCLUSION

In accordance with the foregoing, the court **ORDERS** as follows:

1. The court **GRANTS** final approval of the proposed Settlement Agreement (Doc. No. 168-2 at 2-22);

2. Class Members are defined as:

> The three hundred and thirty-three visitors to Richard J. Donovan Correctional Facility, from May 5, 2018 to November 3, 2022, [], who underwent a search of their person as a condition to visiting an incarcerated person at RJD during that time period. Defendants' agents and representatives, the judge presiding over the Action, and members of their immediate respective families are excluded from the Class;

3. This order applies to all claims or causes of action settled under the Settlement Agreement and binds all Class Members who did not affirmatively opt-out of the Settlement Agreement by submitting a timely and valid Request for Exclusion. This order does not bind persons who filed timely and valid Requests for Exclusion;

4. Plaintiffs and all Class Members who did not timely submit a valid Request for Exclusion are: (1) deemed to have released and discharged Defendants from any and all Released Claims accruing during the Class Period; and (2) barred and permanently enjoined from prosecuting any and all Released Claims against the Released Parties. The full terms of the releases described in this paragraph are set forth in section V.III of the Settlement Agreement and are specifically incorporated herein by this reference;

5. The Settlement Administrator will issue individual settlement payments to participating Class Members according to the terms and timeline stated in the Settlement Agreement;

6. The court **GRANTS** Plaintiffs' Motion for Attorneys' Fees and Litigation Costs (Doc. No. 160).  The court **GRANTS** Class Counsel attorneys' fees in the amount of $1,400,000 and $37,500 in costs from the Settlement Fund.  The Settlement Administrator shall pay Class Counsel from the Settlement Fund within ten

20cv848 JM(MSB)

(10) days of Final Approval of the Settlement, as set forth in Paragraph IV.F. of the Settlement Agreement;

7. The court **GRANTS** a class representative award of $25,000 to Plaintiff Rhonda R. Fitzgerald to be paid from the Settlement Fund. The Settlement Administrator shall pay Plaintiff from the Settlement Fund within ten (10) days of the Final Approval of the Settlement, as set forth in Paragraph IV.E. of the Settlement Agreement;

8. The court **APPROVES** settlement administrator costs of $19,454. Payment shall be made from the Settlement Fund to Simpluris pursuant to the timeline stated in the Settlement;

9. The court retains continuing jurisdiction over this Settlement solely for the purposes of enforcing the agreement, addressing settlement administration matters and addressing such post-judgment matters as may be appropriate under court rules and applicable law;

10. On or before **January 7, 2025**, the Class Administrator shall provide a declaration advising the court on the status of the distribution of the Settlement Funds; and

11. Judgment is entered on the terms set forth above. The Clerk of the Court shall **CLOSE** the case.

**IT IS SO ORDERED**.

Dated: October 28, 2024

Hon. Jeffrey T. Miller
United States District Judge

20cv848 JM(MSB)